864 So.2d 645 (2003)
STATE of Louisiana
v.
Marvin JOHNSON.
No. 03-KA-903.
Court of Appeal of Louisiana, Fifth Circuit.
December 9, 2003.
*647 Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, LA, Counsel for Appellant, Marvin Johnson.
Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Alan D. Alario, II, Assistant District Attorneys, Gretna, LA, Counsel for Appellee, State of Louisiana.
Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY and SUSAN M. CHEHARDY.
SUSAN M. CHEHARDY, Judge.
On January 29, 2002, the Jefferson Parish District Attorney's Office filed a bill of information charging defendant, Marvin Johnson, with one count of distribution of cocaine, in violation of La. R.S. 40:967(A),[1] and one count of distribution of cocaine within 1000 feet of a religious building property, in violation of La. R.S. 40:981.3. On January 30, 2002, defendant was arraigned and pled not guilty.
Trial commenced on the remaining distribution of cocaine within 1000 feet of a religious building property on May 8, 2002. After a two-day trial, the twelve-member jury returned a verdict of guilty as charged. After the jury was polled the trial judge declared the verdict legal.
On May 23, 2002, the defendant filed a Motion in Arrest of Judgment and Motion for New Trial, which were denied by the trial judge. Thereafter, the trial judge sentenced defendant to 15 years at hard labor, specifically denying defendant the benefit of parole, probation, or suspension of sentence for two years, as required by the sentencing statute.[2] Defendant filed a *648 written motion for reconsideration of sentence, which was denied by the trial judge. Further, defendant filed a motion for appeal, which was granted.[3]
On March 23, 2002, the State also filed a bill of information pursuant to La. R.S. 15:529.1 alleging that the defendant was a fourth felony offender. That day, the defendant denied the allegations of the multiple offender bill of information. On July 25, 2002, defendant also filed a written objection.
On July 25, 2002, the trial judge held a hearing on the multiple offender bill of information. After hearing testimony, the trial judge found that State had presented sufficient evidence that the defendant was a fourth felony offender. The trial judge then[4] sentenced defendant to imprisonment at hard labor for twenty years without probation or suspension of sentence.[5]
On July 26, 2003, defendant filed a motion to reconsider sentence, which was denied by the trial court judge. That same day, the defendant filed a written appeal motion, which was granted by the trial judge.

Facts
In early October of 2001, the Jefferson Parish Sheriff's Office ("JPSO") received several telephone calls from concerned citizens reporting illegal drug sales in Marrero, Louisiana. In response, the Jefferson Parish Sheriff's Office set up an undercover operation near the intersection of Fourth Street and Meyer Street in Marrero on October 8, 2001.
Jefferson Parish Sheriff's Office Narcotics Agent Kim Blanche asked Robin Jones, a JPSO undercover agent, to participate in the operation. Agent Blanche informed Agent Jones of the target area and provided her with two traceable[6] $20 bills.
At approximately 1:00 p.m. on October 8, 2001, Agent Jones proceeded in her vehicle, which is specially equipped with a hidden video camera and voice transmitter, to the corner of Fourth and Meyer Street. When she drove into the area, she saw a black male wearing sunglasses, a red sweater, and stone-washed blue jeans sitting under a tree.
Agent Jones drove up to the man and asked for two "20's." The suspect leaned into Agent Jones's vehicle and spoke with her about buying "20's," which is streetslang *649 for crack cocaine. After this discussion, he obtained an off-white "rock" from one of several men sitting on a nearby porch. The suspect walked back to the undercover agent's car, broke off a small piece of the "rock," took $20.00 from the undercover agent, and then gave her the "rock." The entire transaction was captured on videotape, which was later played at the trial.
After completing the transaction, Agent Jones met Agent Blanche at a pre-arranged location and turned the evidence, including the remaining $20 bill, the video tape and the "rock," over to Agent Blanche. When Agent Blanche field-tested the "rock," it was positive for cocaine. Subsequently, Charles Krone, an expert forensic scientist at the Jefferson Parish Crime Lab, analyzed the "rock" and confirmed that the substance was cocaine.
When Agent Blanche and her supervisor, Sergeant Joe Williams, reviewed the videotape of Agent Jones's undercover purchase, Sergeant Williams recognized the seller as the defendant, Marvin Johnson. At Sergeant Williams's instruction, Agent Blanche compiled a photographic lineup that contained Johnson's photograph.
On October 11, 2001, Agent Blanche showed the lineup to Agent Jones. Agent Jones identified the photograph of defendant, Marvin Johnson, as a photograph of the man who sold her the "rock" of crack cocaine on October 8, 2001. The defendant was later arrested in a "roundup."[7]
On April 23, 2002, Sergeant Williams went to the scene of the October 8, 2001 drug purchase, took photographs of the area, and measured the distance between the drug transaction and the church property. When Sergeant Williams measured the distance using a "rolodex," he determined that the distance was 990 feet. After the State presented testimony and evidence at trial, the twelve-person jury found that defendant was guilty as charged.
In his first assignment of error, the defendant argues that the evidence was insufficient to support the verdict. He specifically contends that the State failed to prove an essential element of the charged offense, namely, that the offense occurred within 1000 feet of a religious property. He claims that the rolodex used to measure the distance has "unknown accuracy." He further alleges that the "pedestrian method" used by Sergeant Williams has previously been found to be unreliable by the courts. The State notes that the method of measurement was not challenged at trial and, thus, is not reviewable on appeal. The State further replies that, if this issue were reviewed, the use of the "pedestrian method" inured to the defendant's benefit since the "pedestrian method" generally provides a longer measure of the distance between two points than a "straight line" method.
In reviewing the sufficiency of the evidence, due process requires the reviewing court to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under Jackson, review of a criminal conviction record for sufficiency of evidence does not require a court to ask itself whether it believes that the evidence at the *650 trial established guilt beyond a reasonable doubt.
A reviewing court is required to consider the whole record, and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt. The actual trier of fact is presumed to have acted rationally until it appears otherwise. State v. Mussall, 523 So.2d 1305 (La.1988). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual finding. State v. Stec, 99-633 (La.App. 5 Cir. 11/30/99), 749 So.2d 784, 787.
In applying this standard, the reviewing court will not access credibility nor reweigh the evidence. State v. Marcantel, 00-1629 (La.4/3/02), 815 So.2d 50, 56. The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness; thus, a reviewing court may impinge upon the fact finder's discretion "only to the extent necessary to guarantee the fundamental protection of due process of law." State v. Tate, 01-1658 (La.5/20/03), 851 So.2d 921.
The defendant was convicted of distribution of cocaine within 1000 feet of a religious building property, a violation of La. R.S. 40:981.3(A)(3). That section provides, in pertinent part:
(a) Any person who violates a felony provision of R.S. 40:966 through R.S. 40:970 of the Uniform Controlled Dangerous Substances Law while on any religious building property, public housing authority property, or within one thousand feet of any such property, if the area is posted as a drug-free zone, shall, upon conviction, be punished in accordance with Subsection E of this Section.
(b) In order for the provisions of this Section to apply to religious buildings or to public housing authority property, the building must be posted as a drug-free zone as provided herein. The design and posting of the signs shall be at the discretion of the entity that owns or has authority over the religious building or public housing authority property. In order to post the area as a drug-free zone, the signs shall be located in a visible manner on or near each religious building or public housing authority property indicating that such area is a drug-free zone, that such zone extends for a distance of one thousand feet, and that a felony violation of the Uniform Controlled Dangerous Substances Law will subject the offender to severe penalties under law.
(Emphasis added).
Further, 40:981.3(C)(4) provides:
(4) "Religious building property" means property on which is located any church, synagogue, mosque, or other building, structure, or place used for religious worship or other religious purpose.
La. R.S. 40:967 prohibits the manufacture and distribution of controlled dangerous substances as follows:
A. Except as authorized by this Part or by Part VII-B of Chapter 5 of Title 40 of the Louisiana Revised Statutes of 1950, it shall be unlawful for any person knowingly or intentionally:
(1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule II[.]
Finally, La. R.S. 40:964(A)(4) defines cocaine as a Schedule II drug.
On appeal, defendant argues that the State failed to prove that the alleged drug transaction occurred within 1000 feet of a *651 religious building property because the "pedestrian method" used to measure the distance from the alleged drug transaction to the church building property was faulty. He argues that the only acceptable method for measuring the distance specified in the statute is a "straight line" method.
Although we note the defendant's argument is novel, we do not find it persuasive. First, we note that defendant did not avail himself of the opportunity to establish the accuracy of the measuring device or to attack the method of measurement produced by the rolodex at trial. Thus, the record does not contain evidence to support his claims. Second, while the defendant cites several Louisiana cases for the proposition that the "pedestrian method" of measuring distance is improper, we do not find those cases applicable to this factual scenario.
At trial, Sergeant Williams testified that, on April 23, 2003, he used a calibrated rolodex to measure the distance from the church's property line to the place where the drug transaction occurred. Before going to the scene, he reviewed the videotape of the drug transaction to accurately locate the site of the transaction.[8] Next, he walked from the drug transaction site to the church property line while rolling the rolodex to measure the distance. When he reached the church property line, the rolodex registered 990 feet.
At trial, Sergeant Williams also identified the locations using photographs that he had taken and an aerial photograph of the neighborhood in question. Sergeant Williams's testimony was uncontradicted. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual finding. State v. Ruffin, 02-798 (La.App. 5 Cir. 12/30/02), 836 So.2d 625, 630, n. 6.
Moreover, whether the State had proven the distance from the crime scene to the church property beyond a reasonable doubt was a question for the jury. State v. Shillow, 602 So.2d 28, 31-32 (La. App. 3 Cir.1992). It was the jury's duty to determine whether the distance had been proven beyond a reasonable doubt. Sergeant Williams's testimony on the distance between the corner of Fourth and Meyer Street to the property line of the church was evidence that the jury was free to accept or reject.
The jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. The jury heard Sergeant Williams's testimony and apparently found it to be credible, believing the accuracy of his measurements. It is not the function of the appellate court to access the credibility of witnesses or reweigh the evidence. State v. Kinsel, 00-1610 (La.App. 5 Cir. 3/28/01), 783 So.2d 532, 537, writ denied, 01-1230 (La.3/28/02), 812 So.2d 641.
When the evidence is viewed in the light most favorable to the prosecution, a rational trier of fact could have found that the State proved the essential elements of the charged offense beyond a reasonable doubt, including that the drug violation occurred within 1000 feet of a religious building property. We find no merit in defendant's first assignment of error.
In his second assignment of error, defendant argues that the trial court imposed an excessive sentence. Defendant specifically contends that his sentence of twenty years of imprisonment as a fourth felony offender, which is the statutory minimum, *652 is excessive. He reasons that his predicate offenses were non-violent and claims that he was not dealing drugs but assisting a fellow drug abuser to obtain a small quantity of cocaine for personal use. He alleges under these circumstances the trial judge should have made a downward departure from the mandatory minimum sentence. The State replies that the sentence is the minimum sentence statutorily prescribed and is not excessive.
In this case, the trial judge sentenced defendant as a fourth felony offender to twenty years imprisonment at hard labor without benefit of probation or suspension of sentence.[9] At defendant's multiple offender sentencing, the trial judge noted that defendant's predicate felonies were not crimes of violence and, thus, sentenced him to twenty years at hard labor, the mandatory minimum under La. R.S. 15:529.1(A)(1)(c)(i).
After he was sentenced, the defendant lodged an objection arguing that the sentence was excessive and amounted to cruel and unusual punishment because of the quantity of narcotics involved (i.e., ".1 grams"). The defendant also filed a written motion for reconsideration of sentence, alleging that his sentence was excessive and the trial judge failed to consider mitigating circumstances.
The Eighth Amendment to the United States Constitution and Article I, Section 20 of the Louisiana Constitution prohibit the imposition of excessive or cruel punishment. A mandatory sentence may be excessive if the sentence "makes no measurable contribution to acceptable goals of punishment or amounts to nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime." State v. Armstrong, 99-925 (La.App. 5 Cir. 2/16/00), 756 So.2d 533, 537, writ denied, 00-2419 (La.6/1/01), 793 So.2d 182, cert. denied, 534 U.S. 1058, 122 S.Ct. 651, 151 L.Ed.2d 568 (2001), writ granted in part, on other grounds, 02-2464 (La.9/5/03), 855 So.2d 731.
The mandatory minimum sentences established in the Habitual Offender Statute are presumed to be constitutional. La. R.S. 15:529.1; State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 675 (citing State v. Dorthey, 623 So.2d 1276, 1281 (La.1993)). In order to rebut the presumption that the mandatory minimum sentence is constitutional, defendant must clearly and convincingly show that he is exceptional, that is, that because of unusual circumstances he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. State v. Johnson, supra; State v. Dorthey, supra.
Downward departures from the minimum sentence under the Habitual Offender Statute should occur only in rare situations. State v. Johnson, supra. A downward departure from the minimum sentence mandated by the Habitual Offender Statute is warranted if the trial court determines that the minimum sentence mandated makes no measurable contribution to acceptable goals of punishment or that the sentence amounts to nothing more than a purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the offense. State v. Robinson, 02-1253 (La.App. 5 Cir. 4/8/03), 846 So.2d 76, 86 (citing State v. Dorthey, 623 So.2d at 1280). If a downward departure is warranted, the trial judge shall sentence the defendant to the longest sentence, which is not constitutionally *653 excessive. State v. Johnson, 709 So.2d at 677; State v. Robinson, 846 So.2d at 86-87.
In this case, defendant's underlying felony offense was a conviction for distribution of cocaine within a thousand feet of a religious building property. La. R.S. 40:981.3. The penalty section of that statute, La. R.S. 40:981.3(E), mandates the "maximum fine" and imprisonment "for not more than one and one half times the longest term authorized by the applicable provisions" of La. R.S. 40:967.
The penalty provision for the applicable distribution of cocaine statute, La. R.S. 40:967(B)(4)(b), is a sentencing range of between two and thirty years at hard labor, with two years to be served without benefit of parole, probation, or suspension of sentence. Therefore, after being convicted of violating La. R.S. 40:981.3(E), defendant was subject to a sentence range from two to forty-five years at hard labor.
At the multiple offender hearing, the State presented evidence that defendant had three predicate felony convictions:[10] (1) attempted simple burglary, a violation of La. R.S. 14:27; R.S. 14:62; (2) attempted possession of cocaine, a violation of La. R.S. 14:27; R.S. 40:967(C)); and (3) possession of stolen property, a violation of La. R.S. 14:69. As noted above, under La. R.S. 15:529.1(A)(1)(c)(i), defendant's sentencing exposure ranged from twenty years to life imprisonment. Again, defendant received the mandatory minimum sentence of twenty years at hard labor without benefits of probation or suspension of sentence.[11]
On appeal, defendant alleges that he should have been given a downward departure from the mandatory minimum sentence of twenty years of imprisonment. First, defendant argues that the underlying offense and his predicate offenses were non-violent. This argument was not presented to the trial court in either the defendant's motion for reconsideration of sentence or during his argument at the multiple offender sentencing. Since this issue is raised for the first time on appeal, it is not subject to review. La.C.Cr.P. art. 881.1, State v. Mims, 619 So.2d 1059 (La. 1993).
Next, defendant seeks a downward departure on the basis that the amount of narcotics (.01 grams) was small. In State v. Robinson, 02-530 (La.App. 5 Cir. 10/29/02), 831 So.2d 460, 469, the defendant, a fourth felony offender who was given a sentence of life, argued for a downward departure on the basis that his crime involved "the minimal amount of cocaine." This Court observed in Robinson, supra, at 469, that defendant "has made no showing of exceptional circumstances sufficient to justify a downward departure from the mandatory sentence of life imprisonment." We find that here, as in Robinson, the defendant has not made a showing of exceptional circumstances, which is required to justify a downward departure from the minimum sentence mandated by the statute.
Moreover, even though the record reflects the defendant had an extensive criminal history, including seven felony *654 convictions and numerous misdemeanor convictions, the trial judge still imposed the minimum mandatory sentence. Arguably, the trial judge's sentence reflected the non-violent nature of defendant's felony convictions as well as the amount of illegal drugs involved in the underlying transaction. Finally, where the defendant continues to commit felony after felony, the imposition of the minimum mandatory sentence under La. R.S. 15:529.1 does not appear to be excessive. See State v. Johnson, 709 So.2d at 677. Based on the foregoing, we find that defendant's second assignment of error lacks merit.
In his third assignment of error, defendant assigned as error all patent errors. Therefore, we have reviewed the record and note two errors. First, although the July 25, 2002 minute entry/commitment indicates the trial judge vacated the original sentence before imposing the multiple offender sentence, the transcript of that same date does not. The Louisiana Supreme Court found that an enhanced sentence in such circumstances was valid. State v. Mayer, 99-3124 (La.3/31/00), 760 So.2d 309, 310, reh'g denied, 99-3124 (La.5/12/00), 761 So.2d 557. Further, this Court has followed Mayer in State v. Davis, 01-123 (La.App. 5 Cir. 7/30/01), 792 So.2d 126, 130, and State v. Cushinello, 01-109 (La.App. 5 Cir. 7/30/01), 792 So.2d 926, writ denied, 01-2505 (La.9/20/02), 825 So.2d 1159. Therefore, no action is required.
Lastly, defendant's multiple offender sentence is illegally lenient because the trial judge did not impose the two-year restriction on parole required by the reference statute, La. R.S. 40:967(B)(4)(b). State v. Tate, 99-1483 (La.11/24/99), 747 So.2d 519, 520. However, according to State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790, 799, this error does not require any action by this Court because La. R.S. 15:301.1(C), imposes the restrictions by operation of law. State v. Joseph, 02-717 (La.App. 5 Cir. 1/14/03), 839 So.2d 103, 106, writ granted, other grounds, 03-315 (La.5/16/03), 847 So.2d 1196.
AFFIRMED.
NOTES
[1] On May 6, 2002, the State dismissed count one of the bill of information, the distribution of cocaine charge.
[2] The trial judge failed to impose the mandatory fine under La. R.S. 40:981.3. State v. McCraney, 01-439 (La.App. 5 Cir. 9/25/01), 798 So.2d 227, 232-233. However, this defect was moot once defendant's original sentence was vacated before he was sentenced as a multiple offender. State v. Jerome, 03-126 (La.App. 5 Cir. 4/29/03), 845 So.2d 1194, 1199.
[3] Defendant's motion for appeal was premature when it was filed after conviction and sentence, but before the sentence as a multiple offender, the defect was cured by the defendant's subsequent re-sentencing. State v. Balser, 96-443 (La.App. 5 Cir. 11/14/96), 694 So.2d 351, 354.
[4] Although the July 25, 2002 minute entry/commitment reflects that the original sentence was vacated, the transcript of that hearing does not reflect that the original sentence was vacated. See error patent discussion, infra.
[5] Although the trial judge did restrict probation and suspension for the entire term of defendant's sentence in accord with La. R.S 15:529.1(G), the trial judge inadvertently failed to restrict parole for two years in accord with the sentencing provision of the reference statute. See error patent discussion, infra.
[6] Agent Blanche testified that she photocopied the money before she gave it to Agent Jones to maintain a record of the serial numbers of the bills that were used in the investigation. The bill that Agent Jones gave to the suspect during the undercover drug purchase was, however, not recovered.
[7] Agent Blanche and Sergeant Williams explained that suspected drug dealers are often arrested in a "roundup" after a transaction to protect the undercover agent's safety and ongoing undercover operations.
[8] On the videotape, the defendant is seen standing in front of a "No Truck Route" sign located near the corner of Fourth and Meyer in Marrero.
[9] See error patent discussion, infra.
[10] Each of the underlying offenses occurred in the Twenty-Fourth Judicial District Court. The charge of attempted simple burglary, which occurred on August 5, 2000, resulted in a guilty plea for that offense in No. 00-557 on October 24, 2000. The charge for attempted possession of cocaine, which occurred on March 14, 1997, also resulted in a guilty plea for that offense in No. 97-2216 on May 30, 1997. The charge for possession of stolen property, which occurred on July 19, 1993, resulted in a guilty plea for that offense in No. 93-4951 on October 22, 1993.
[11] See error patent discussion, infra.