927 So.2d 514 (2006)
STATE of Louisiana
v.
Gregory JONES.
No. 05-KA-840.
Court of Appeal of Louisiana, Fifth Circuit.
March 28, 2006.
*516 Paul D. Connick, Jr., District Attorney, Terry Boudreaux, Desiree M. Valenti, Roger Jordan, Assistant District Attorneys, Twenty-Fourth Judicial District, Parish of Jefferson, Gretna, Louisiana, for Plaintiff/Appellee.
Arcenious F. Armond, Jr., Stacey E. Stringer, Gretna, Louisiana, for Defendant/Appellant.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY, and FREDERICKA HOMBERG WICKER.
JAMES L. CANNELLA, Judge.
The Defendant, Gregory Jones, appeals from his conviction on Count One, distribution of cocaine within 1000 feet of a religious building and on Count Two, distribution of cocaine, and his respective sentences of imprisonment as a fourth felony offender, to 30 years at hard labor, without benefit of probation or suspension of sentence, and 15 years at hard labor, without benefit of parole probation or suspension of sentence for the first two years, to run concurrently. For the reasons which follow, we affirm.
On January 8, 2004, the Jefferson Parish District Attorney filed a three count bill of information against the Defendant. In Counts One and Two, the State charged the Defendant with distribution of cocaine within one thousand feet of a religious building, a violation of La. R.S. 40:981.3. In Count Three, the State charged the Defendant with distribution of counterfeit cocaine, a violation of La. R.S. 40:971.1. The Defendant was arraigned on January 9, 2004, and pled not guilty to all charges.
On April 13, 2004, the trial court heard and denied defense motions to suppress *517 evidence and identification.[1] The Defendant was tried by a 12 person jury on all three counts on July 20 and 21, 2004.
At trial, Agent Wallace Davis testified that he was assigned to the narcotics division of the Jefferson Parish Sheriff's Office (JPSO). During April and May of 2003, he was part of an undercover operation investigating complaints from the Marrero area that people were selling drugs on street corners. The investigation was focused on the 300 block of Robinson Street. Agent Eric Dufrene testified that the 300 block of Robinson is in a residential area known for crime and drug trafficking. He stated that he has made numerous drug related arrests there.
Staff Sergeant Paul Smith[2] testified that he is currently on active duty in the United States military. Before being called to active duty, he was a narcotics agent with the JPSO. During the Robinson Street operation, he was assigned to work in plain clothes, attempting drug purchases in the targeted area. His vehicle was equipped with a hidden camera to record the drug transactions, and with an audio device to broadcast them to backup officers in the area.
Sergeant Smith testified that at 3:45 p.m. on April 3, 2003, he drove an unmarked car to the 300 block of Robinson Street, where three or four people were standing. He stopped his vehicle and asked the Defendant where he could get a "twenty."[3] The Defendant told him to drive around the block. Sergeant Smith did as the Defendant instructed, and returned to the place where the Defendant was standing. The Defendant approached Sergeant Smith's vehicle and gave him a rock of crack cocaine. Sergeant Smith, in turn, gave the Defendant $20 in cash. Sergeant Smith then drove away from the scene. The officer testified that the block where the transaction took place is within 1,000 feet of St. Joseph Baptist Church.
Agent Dufrene testified that he listened to the transaction between Sergeant Smith and the Defendant over the radio monitor. Afterwards, Sergeant Smith gave him descriptions of the Defendant and his location. Agent Dufrene wrote down those descriptions. Agent Dufrene met with Sergeant Smith and took possession of State's Exhibit 1, the crack cocaine Sergeant Smith had purchased from the Defendant, and State's Exhibit 2, the videotape of the transaction. The videotape was played for the jury at trial.
A short time after the drug transaction took place, Agent Dufrene went to the scene. He found the Defendant in front of 314 Robinson Street, a short distance from where he sold the drugs. The officer stopped the Defendant and performed a field interview. He completed a field interview card, noting the Defendant's name, date of birth, hair, eye color, and other personal information. He also took two photographs of the Defendant. Agent Dufrene performed a pat-down of the Defendant's outer clothing for weapons. He did not recover any narcotics or money from the Defendant at that time.
Sergeant Smith testified that on April 7, 2003, Agent Dufrene showed him a photographic lineup at the sheriff's office. Sergeant Smith positively identified the *518 Defendant as the person from whom he purchased crack cocaine on April 3, 2003. Sergeant Smith also identified the Defendant in court.
Sergeant Smith testified that he participated in another undercover purchase at 4:53 p.m. on May 6, 2003. On that day he again drove his unmarked car to the 300 block of Robinson Street. He saw the Defendant there, and asked him for a twenty. The Defendant told Sergeant Smith to drive around the block. Sergeant Smith did so, and when he returned, the Defendant approached his vehicle and gave him $20 worth of crack cocaine. Sergeant Smith gave the Defendant $20 and then left the area. Sergeant Smith identified State's Exhibit 37 as the rock of crack cocaine he purchased from the Defendant on May 6, 2003.
The May 6, 2003 transaction was videotaped, and the tape was shown to the jury at trial. (State's Exhibit 38). Sergeant Smith identified the Defendant in court as the person who sold him crack cocaine on May 6, 2003.
Agent Aaron Wilkie testified that he provided surveillance for the May 6, 2003 transaction. Following the purchase, Sergeant Smith radioed a description of the suspect and his location to Agent Wilkie. Seven minutes after the transaction was completed, Agent Wilkie went to the scene and stopped the Defendant for a field interview. The interview lasted five to ten minutes, and it took place at 314 Robinson Street. Agent Wilkie testified that that address is near St. Joseph Baptist Church. The officer checked the Defendant's identification and took a Polaroid photograph of him. He performed a pat-down search for weapons, but did not find anything of evidentiary value on the Defendant's person. In explaining why the Defendant had Sergeant Smith drive around the block before he would sell him narcotics, Agent Wilkie said that some dealers do not wish buyers to see where their "stash" of drugs is located. Those dealers routinely have potential buyers drive around the block in order to give them an opportunity to retrieve their drugs without being seen.
The parties stipulated that if the chemist, Thomas Angelica, was called as a witness, he would testify that the substance purchased by Sergeant Smith on April 3, 2003 and May 6, 2003 tested positive for cocaine.
Agent Dufrene testified that he used roller tape to measure the distance between where the drug transaction took place and the posted drug-free zone at St. Joseph Baptist Church. According to his measurements, the distance was 326 feet. Agent Dufrene obtained a warrant for the Defendant's arrest. The Defendant was arrested in December, 2003, after the narcotics operation was completed.
The jury returned a verdict of guilty as charged on Count One. As to Count Two, the jury found the Defendant guilty of the lesser included offense of distribution of cocaine. The jury returned a verdict of not guilty as to Count Three.[4]
On August 3, 2004, the trial court sentenced the Defendant to 15 years incarceration at hard labor on counts one and two. The court ordered that the sentences be served concurrently to each other, and consecutively to the sentence given in another case, number 02-4997. The court further directed that "the first two (2) years of sentence is to be served without *519 benefit of parole, probation, or suspension of sentence" and imposed a $10,000 fine.
On August 3, 2004, the State filed a habitual offender bill of information, alleging the Defendant to be a fourth felony offender. On that day, the Defendant was advised of the State's allegations, and entered a denial. On November 16, 2004, the State amended the habitual offender bill by changing the alleged third predicate offense from possession of cocaine to distribution of cocaine. The Defendant was advised of the amended allegations that day, and entered a denial. On January 7, 2005, the Defendant filed a "Motion for Leniency in Accordance with State v. Dorthey."
On January 11, 2005 the trial court heard and granted the Defendant's motion for leniency. The State objected. On that day, the trial judge advised the Defendant of his right to remain silent and his right to a habitual offender hearing. The Defendant waived those rights and entered an admission to the allegations in the habitual offender bill. As part of a sentencing agreement, the trial court vacated the Defendant's original sentence on Count One, and imposed a sentence of 30 years at hard labor, without benefit of probation or suspension of sentence. The trial court further ordered that the sentence run concurrently with the sentence on Count Two, and consecutively to the sentence in case number 02-4997.
On February 10, 2005, the Defendant filed a timely motion for appeal and a motion to reconsider sentence. The trial court granted the appeal that day, and denied the motion to reconsider sentence on February 15, 2005.
We note initially that issues are raised in this appeal contesting the sufficiency of the evidence and alleging one or more trial errors. In such a case, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accordance with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the essential elements of the offense have been proven beyond a reasonable doubt. When the entirety of the evidence, including inadmissible evidence that was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any discussion by us of the trial error issues as to that crime would be pure dicta since those issues are moot.
On the other hand, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must then consider the other assignments of error to determine whether the accused is entitled to a new trial. If the reviewing court determines that there has been trial error (which was not harmless) in cases in which the entirety of the evidence was sufficient to support the conviction, then the accused will be granted a new trial, but is not entitled to an acquittal even though the admissible evidence, considered alone, might be insufficient. Lockhart v. Nelson, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988); State v. Hearold, 603 So.2d 731, 734 (La.1992).
Therefore, we will first determine whether the entirety of the evidence was insufficient to support the Defendant's convictions as argued in his second assigned error.

ASSIGNMENT OF ERROR NUMBER TWO
By this assignment of error the Defendant argues that the State failed to provide *520 sufficient evidence to support his conviction for distribution of cocaine within 1,000 feet of a religious building (Count One), as it did not adequately prove that the April 3, 2003 transaction took place within 1,000 feet of St. Joseph Baptist Church. The Defendant also argues that the State did not provide sufficient evidence to support his conviction for distribution of cocaine on May 6, 2003, (Count Two) because it failed to prove identity.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson, requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291 (per curiam). Here, the Defendant was convicted of distribution of cocaine within one thousand feet of a religious building, a violation of La. R.S. 40:981.3. In pertinent part the statute provides:
(A)(3)(a) Any person who violates a felony provision of R.S. 40:966 through R.S. 40:970 of the Uniform Controlled Dangerous Substances Law while on any religious building property, public housing authority property, or within one thousand feet of any such property, if the area is posted as a drug-free zone, shall, upon conviction, be punished in accordance with Subsection E of this Section.
Sergeant Smith, the undercover agent who purchased the cocaine from the Defendant, testified that the transactions took place in front of the residence at 314 Robinson Street. Sergeant Smith further testified that the 300 block of Robinson Street is a block or two from St. Joseph Baptist Church, and that the site is within 1,000 feet of the church.
Agent Dufrene acted as a surveillance officer for Sergeant Smith during the April 3, 2003 sale. He testified that he did not witness the exchange between Sergeant Smith and the Defendant, but he listened to their verbal exchange from a remote location. Agent Dufrene said he was familiar with the 300 block of Robinson Street, as he had made numerous narcotics arrests there. Agent Dufrene testified that the block is within 1,000 feet of St. Joseph Baptist Church, a posted drug-free zone.
Agent Dufrene stopped the Defendant in front of 314 Robinson Street shortly after the April 3, 2003 sale. He conducted a field interview with the Defendant, and completed an interview card. Agent Dufrene identified State's Exhibit 5 as a photograph of the spot where the transaction took place. The photograph also pictured St. Joseph Baptist Church. Agent Dufrene testified that he used roller tape to measure the distance from where the transaction occurred to the posted drug-free zone at the church. He measured the distance at 326 feet. Agent Dufrene identified State's Exhibit 13 as a photograph of the roller tape he used. The officer testified that he completed the measurement "within the next couple of days after the buy." He measured the distance by himself.
The Defendant challenges Sergeant Smith's and Agent Dufrene's credibility regarding the distance between the site of the drug sale and the church. The Defendant further challenges the reliability of the method Agent Dufrene used to measure the distance.
Both Sergeant Smith and Agent Dufrene were at the scene of the sale and were able to assess the distance in person. While Agent Dufrene did not actually witness the drug transaction, Sergeant Smith informed him of its exact location. On *521 cross-examination, Agent Dufrene testified that the sheriff's office maintained and issued the roller tape. The jury was free to accept or reject the officers' testimony regarding distance and measurement. The jury also viewed photographs of the scene that pictured the church, and were thus able to judge the distance visually. It is not the function of the appellate courts to reweigh evidence or assess the credibility of witnesses. State v. Young, 04-1318, p. 5 (La.App. 5th Cir.4/26/05), 902 So.2d 461, 465.
This Court has previously rejected a similar argument in State v. Johnson, 03-903 (La.App. 5th Cir.12/9/03), 864 So.2d 645. In Johnson, the defendant argued that the State failed to prove the distance from the drug transaction to church property because the method used to measure the distance was faulty. The police officer testified that he measured the distance, 990 feet, by using a rolodex. The defendant alleged that the accuracy of the rolodex was unknown. This Court noted that the defendant did not attack the method of measurement at trial. We noted that the jury was free to accept or reject the officer's testimony regarding distance, and that it had apparently found the officer's testimony to be credible and believed the accuracy of his measurements. In rejecting the defense argument regarding the sufficiency of the evidence of the measurement, this Court found that the State proved that the drug violation occurred within 1,000 feet of a religious building.
As in Johnson, the Defendant herein did not challenge the validity of the measuring method at trial. The jury, in convicting the Defendant on Count One, found the testimony credible and that it established the distance of less than 1000 feet between the place where the drug transaction took place and the religious building. We find that the evidence was sufficient to support this jury finding.
The Defendant also complains that the State failed to prove that St. Joseph Baptist Church qualifies as a protected "drug free zone" under La. R.S. 40:981.3(A)(3)(b). That portion of the statute provides:
In order for the provisions of this Section to apply to religious buildings or to public housing authority property, the building must be posted as a drug-free zone as provided herein. The design and posting of the signs shall be at the discretion of the entity that owns or has authority over the religious building or public housing authority property. In order to post the area as a drug-free zone, the signs shall be located in a visible manner on or near each religious building or public housing authority property indicating that such area is a drug-free zone, that such zone extends for a distance of one thousand feet, and that a felony violation of the Uniform Controlled Dangerous Substances Law will subject the offender to severe penalties under law.
Contrary to the Defendant's claim, Agent Dufrene testified that the church was posted as a drug-free zone. Moreover, the State produced a photograph (State's Exhibit 12) which Agent Dufrene identified as a photograph of the "drug-free zone" sign posted on the church. A review of the photograph shows that the sign is posted on an outside wall, and that it contains the words:

DRUG FREE ZONE HOT LINE 3NO-DRUG (EXTENDS 1000 FEET FROM PROPERTY LINE) VIOLATORS SUBJECT TO INCREASED CRIMINAL PENALTIES R.S. 40:981.3(E)
It is further noted that the trial court, in its jury instructions, gave as one of the *522 required elements of the offense a finding "that the area was posted as a drug-free zone." Thus, the jurors were properly instructed. They found the evidence was credible, and that it was sufficient to show that the religious building was posted with a sign in accordance with law. We likewise find that the evidence was sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime, beyond a reasonable doubt, that is, that the Defendant distributed cocaine within 1000 feet of a religious building posted with a visible sign on the building indicating that it was a drug-free zone that extends for 1000 feet and that a felony violation of the Uniform Controlled Dangerous Substances Law will subject the offender to severe penalties. We find no merit in the Defendant's arguments pertaining to his conviction on Count One.
With respect to Count Two, the Defendant argues that the State failed to provide sufficient evidence to prove his identity as the person who sold cocaine to Sergeant Smith on May 6, 2003. La. R.S. 40:967 provides that it shall be unlawful for any person "knowingly or intentionally. . . [t]o . . . distribute, or dispense, . . . a controlled dangerous substance . . . classified in Schedule II[.]" Cocaine and its derivatives are listed in Schedule II. La. R.S. 40:964. The Defendant is guilty of distribution of cocaine when he transfers possession or control of cocaine to his intended recipients. State v. Housley, 04-347, p. 6 (La.App. 5th Cir.9/28/04), 884 So.2d 1204, 1207. Encompassed in proving the elements of an offense is the necessity of proving the defendant's identity as the perpetrator. State v. Williams, 04-1016, p. 5 (La.App. 5th Cir.3/29/02), 901 So.2d 527, 530, writ denied, 05-1080 (La.12/9/05), 916 So.2d 1056.
Sergeant Smith positively identified the Defendant in a photographic lineup as the man who sold him crack cocaine on April 3, 2003. The State produced State's Exhibit 2, the videotape of the April 3 transaction. The Defendant is visible on that videotape. The State also produced the videotape of the May 6, 2003 transaction. (State's Exhibit 38). As the Defendant notes, the perpetrator's face is not visible on that videotape. Sergeant Smith testified that during the May 6, 2003 transaction, the Defendant squatted next to the driver's side door of his (Sergeant Smith's) vehicle so that his face was not captured by the hidden camera. It was Sergeant Smith's belief that the Defendant suspected he was a police officer, and that he wanted to ensure he would not be filmed during the transaction. Sergeant Smith testified that he was, nevertheless, certain that the Defendant was the person who sold him crack cocaine on May 6, 2003.
The videotape of the May 6, 2003 exchange shows that Sergeant Smith notified surveillance officers that he recognized the Defendant from prior transactions, but that he could not immediately recall the Defendant's name. Still, Sergeant Smith testified that there was no doubt in his mind that the Defendant sold him cocaine on May 6, 2003.
The Defendant notes that Sergeant Smith told surveillance officers that the May 6, 2003 drug dealer was wearing a "tan shirt." But, Sergeant Smith testified that the photograph of the Defendant taken by Agent Wilkie at the time of the field interview shows that the Defendant wore a gray shirt. When questioned about this discrepancy, Sergeant Smith responded that he had no doubt that the Defendant was the man who sold him crack cocaine on May 6, 2003. The jury clearly found Sergeant Smith's identification credible. As previously noted, it is not the function *523 of the appellate court to reassess the credibility of witnesses. We find that the officer's unequivocal identification of the Defendant as the person who sold him cocaine on May 6, 2003 coupled with the other evidence, was sufficient evidence of the Defendant's identification as the perpetrator of the offense. We find no merit in the Defendant's arguments regarding the insufficiency of the evidence supporting his convictions.

ASSIGNMENT OF ERROR NUMBER ONE
By this assignment of error the Defendant argues that his trial counsel was ineffective. He argues that counsel's omissions and errors, including failing to object to hearsay testimony by the State's witnesses, resulted in an unfair trial that rendered the jury's verdict unreliable.
The Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution provide that a defendant is entitled to effective assistance of counsel. In order to show ineffective assistance of counsel, a defendant must demonstrate (1) that his attorney's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that counsel's errors or omissions resulted in prejudice so great as to undermine confidence in the outcome. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. LaCaze, 99-0584, p. 20 (La.1/25/02), 824 So.2d 1063, 1078, cert. denied, 537 U.S. 865, 123 S.Ct. 263, 154 L.Ed.2d 110 (2002). In order to show prejudice, the defendant must show that, but for his counsel's unprofessional conduct, the outcome of the trial would have been different. Strickland v. Washington, 466 U.S. at 693, 104 S.Ct. at 2068. There is no precise definition of reasonably effective assistance of counsel, so any inquiry into the effectiveness of counsel must be specific to the facts of the case, and must take into consideration the attorney's perspective at the time. State v. LaCaze, 99-0584 at p. 20, 824 So.2d at 1078-1079.
A claim of ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief filed in the trial court, where a full evidentiary hearing can be conducted, rather than on direct appeal. State v. Dabney, 05-53, p. 3 (La.App. 5th Cir.6/28/05), 908 So.2d 60, 62-63. But when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Deruise, 98-0541, p. 34 (La.4/3/01), 802 So.2d 1224, 1247, cert. denied, 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001). In this case, there is sufficient evidence in the record to allow for a ruling on the merits of the Defendant's argument.
Agent Dufrene was the first witness called by the State. He testified that he was in communication with undercover agent Sergeant Smith during the April 3, 2003 drug purchase. Agent Dufrene testified, without defense objection, to what he heard Sergeant Smith say over the radio monitor during the transaction. Agent Dufrene also testified to Sergeant Smith's descriptions of the Defendant's appearance and the place where the transaction occurred. During Agent Dufrene's testimony, the prosecutor had him identify State's Exhibit 2, a videotape of the undercover transaction between the Defendant and Sergeant Smith on April 3, 2003. Agent Dufrene testified that he used the videotape and the field interview he did with the Defendant to compile a photographic lineup. The prosecutor played the videotape for the jury while Agent Dufrene described what was depicted on the tape. Defense counsel told the court he had no *524 objection to the tape's introduction, and he did not make any objections when the prosecutor questioned Agent Dufrene about the tape's contents.
The Defendant argues that Agent Dufrene's testimony constituted inadmissible hearsay, since he testified to information that Sergeant Smith gave him over the radio monitor, and to actions of which he did not have firsthand knowledge. Hearsay is defined by La. C.E. art. 801(C) as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is generally inadmissible at trial. La. C.E. art. 802. But the admission of a hearsay statement is harmless error if the statement is merely cumulative or corroborative of other evidence. State v. Addison, 00-1730, p. 12 (La.App. 5th Cir.5/16/01), 788 So.2d 608, 616, writ denied, 01-1660 (La.4/26/02), 814 So.2d 549.
In this instance, Agent Dufrene's testimony regarding what Sergeant Smith told him, and his narration of the actions seen on the videotape, were cumulative of Sergeant Smith's testimony. Moreover, since Sergeant Smith had firsthand knowledge of the incidents on the tape, he made the statements to which Agent Dufrene testified, and he testified at trial and was available for cross examination, any testimony by Agent Dufrene that might have been admitted without objection was harmless.
Thus, we do not find that defense counsel's performance, in not objecting to Agent Dufrene's testimony, fell below an objective standard of reasonableness under prevailing professional norms or that any omission he made resulted in prejudice so great as to undermine confidence in the outcome of the trial.
As his second ineffectiveness claim, the Defendant argues that his trial counsel was ineffective in failing to object to the admission of the videotape of the April 3, 2003 drug transaction. The Defendant argues that the tape constituted inadmissible hearsay, since the prosecutor had Agent Dufrene identify it and describe its contents despite the fact that he did not witness the events depicted on the tape. The Defendant offers no legal support for his claim and we find none.
The Sixth Amendment to the United States Constitution and Article I, § 16 of the Louisiana Constitution guarantee an accused in a criminal prosecution the right to confront the witnesses against him. The primary purpose behind this right is to secure for the defendant the opportunity for cross-examination. Davis v. Alaska, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974); State v. Jackson, 03-883, p. 17 (La.App. 5th Cir.4/27/04), 880 So.2d 841, 852, writ denied, 04-1399 (La.11/8/04), 885 So.2d 1118.
In this case, the video tape depicts a drug transaction and conversation between the Defendant and Sergeant Smith. Sergeant Smith was a witness at trial and available for cross-examination by the defense. As stated in Crawford v. Washington, 541 U.S. 36, 60-69, 124 S.Ct. 1354, 1369-1374, 158 L.Ed.2d 177 (2004), wherein the United States Supreme Court unequivocally reaffirmed its holding in California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970):
[W]e reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements . . . The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.
*525 Crawford, 541 U.S. at 59 n. 9, 124 S.Ct. 1354. (citations omitted). The Green court recognized that the primary purposes behind the Confrontation Clause were satisfied if the declarant appeared at trial, testified under oath, and was subject to cross-examination.
Thus, we find nothing ineffective in defense counsel's failure to object to the admission of the videotape of the April 3, 2003 drug transaction.
As his third ineffectiveness claim, the Defendant points out that his trial counsel failed to object when the prosecutor asked leading questions of State witnesses Agent Wilkie and Sergeant Smith. The Defendant argues that "The failure of defense counsel to object to the hearsay testimony and leading questions allowed the district attorney to introduce testimony that would otherwise have not been put before the jury and indeed allowed the district attorney to testify in this case."
La. C.E. art. 611(C) provides, in part, "Generally, leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony and in examining an expert witness on his opinions and inferences." Reversal of a conviction is not mandated unless the leading questions signify clear abuse calculated to prejudice the rights of the accused. State v. Quincy, 363 So.2d 647 (La.1978).
As to the prosecutor's questioning of Sergeant Smith, the Defendant cites page 35 of the trial transcript (page 150 of the record). The Defendant does not point to the specific question or questions he believes were leading. The testimony on that page has to do with the April 15, 2003 transaction which pertains to Count Three. The Defendant was acquitted on that count. Thus, we find any issues regarding trial error as to that count moot.
The Defendant also cites the prosecutor's questioning of Sergeant Smith on page 38 of the transcript (page 153 of the record). Again, the Defendant does not point to specific questions which he believes were objectionable. The cited page contains the following testimony regarding the videotape of the May 6, 2003 transaction pertaining to Count Two:
Q. Okay. What happened in that transaction in your window? Were you able to see the defendant in the video?
A. For a very slight second. When he came up to my window, he ducked down and went underneath my camera on the driver's side to where you couldn't even see him after that. It was just a quick second.
Q. When you say, "ducked down," what do you mean by "ducked down"?
A. He just like swooped down and he was just squatting right by my driver's-side door.
Q. Did he stub his toe?
A. No.
Q. What was the deal?
A. Just probably not to get in the camera.
Q. Just in case?
A. Yes, sir.
Q. From what?
A. From a previous  from the previous deals.
Q. So, you made the block, you said?
A. Yes, sir.
Q. Came back and you did the deal?
A. Yes, sir.
Q. What did you get at that point?
A. Twenty dollars worth of crack.
Upon review, we find that most of the foregoing questions do not fall under the definition of a leading question. To the extent that some of the questions tended *526 to suggest the answer and might be considered leading, we find that they did not signify clear abuse calculated to prejudice the rights of the accused. Rather, it appears that the questions were simply an attempt to have the witness elaborate on earlier testimony. As such, the questions were not objectionable and we find that defense counsel was not deficient in failing to object to them.
As to Agent Wilkie, the Defendant cites pages 8 and 13 of the transcript (pages 123 and 128 of the record). Once more, the Defendant does not give specifics as to what questions he believes were objectionable. It is possible that the line of questioning to which the Defendant first refers is the following testimony about a field interview Agent Wilkie conducted with the Defendant after the May 6, 2003 transaction:
Q. You were just around the corner?
A. Yes.
Q. You gave enough time for the undercover officer to leave the scene?
A. Yeah, we gave enough time for him to not only leave the scene, clear the area and then give the description.
Q. Now, when you did this field interview, what location is noted on that field interview card?
A. 314 Robinson.
Q. That's where the field interview would have taken place?
A. Yes.
Q. And is that in close relationship to the St. Joseph Baptist Church?
A. Yes, it is.
Q. Right on the other side of the railroad tracks?
A. Right on the other side.
Like the questioning considered previously, we find that most of the questions were not leading. To the extent that they were, we find no evidence of clear abuse or that the questions were calculated to prejudice the Defendant. Considering all the evidence presented, we find that defense counsel's failure to object to these marginally leading questions did not prejudice the Defendant and, thus, do not support a claim that his counsel was ineffective in this regard.
The next line of questioning to which the Defendant refers had to do with Agent Wilkie's experience in dealing with drug dealers. The prosecutor first laid a foundation by establishing that Agent Wilkie had participated in more than 500 drug operations. In response to the prosecutor's questions, Agent Wilkie described how the typical street dealer stores and handles drugs. We find that the questioning on this point was intended to develop and elaborate on Agent Wilkie's testimony, a purpose permissible under La. C.E. art. 611(C). Therefore, we find no deficiency in defense counsel's failure to object to this line of questioning by the State. Moreover, the Defendant does not allege any prejudice suffered by this line of questioning and we find none.
As his fourth ineffectiveness claim, the Defendant complains that during voir dire, defense counsel referred to the Defendant facing a possible life sentence if convicted. Defense counsel (Mr. Owen) made the following statement before prospective jurors during voir dire:
MR. OWEN:
. . . . . There's a lot of talk about drug laws in this country today. Some people think they are too severe; some people think they are too lenient. Do you believe that the present drug laws in America today where somebody who gets convicted for a piece of crack can get life imprisonment, up to sixty years, is too lenient 
*527 The prosecutor objected, stating "That's not the penalty for possession of crack or distribution of crack. I object to it as even approaching the penalty of crack cocaine."
After voir dire resumed, defense counsel said, ". . . . . Do you think it's too severe if someone is put away for life for, say, a drug charge, and they get fifty years or life. . . ." The prosecutor again objected to the statement as improper voir dire. The trial judge admonished the jury that their job was to decide whether or not to convict, convict of a lesser offense, or acquit; that sentencing was the judge's function. Voir dire then continued.
The Defendant argues on appeal that his attorney's comments implied he was guilty, and thereby prejudiced the jury. We find no merit in this argument.
We find nothing in the question that referenced this Defendant's guilt. To the contrary, the question appears to be a strategic attempt by defense counsel to discover a particular prospective juror's feelings about drug offenders, that is, whether they should or should not be severely punished. We find nothing in this question that evidences ineffectiveness on the part of defense counsel.
Based on the allegations made on appeal and our review of the entire record, we find that the Defendant has not shown that his attorney's performance fell below an objective standard of reasonableness under prevailing professional norms or that counsel's errors or omissions resulted in prejudice so great as to undermine confidence in the outcome of the trial. On the contrary, the Defendant's trial counsel was able to win an acquittal as to one charge, and a lesser verdict on another, despite the fact that the State produced considerable evidence against the Defendant. This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER THREE
By this assignment, the Defendant argues that his habitual offender sentence of thirty years at hard labor is constitutionally excessive.
The sentencing range to which the Defendant was exposed upon conviction for Count One is partly governed by La. R.S. 40:983.1(E), which provides:
(1) Whoever violates a provision of this Section shall be punished by the imposition of the maximum fine and be imprisoned for not more than one and one-half times the longest term of imprisonment authorized by the applicable provisions of R.S. 40:966 through 970.
(2) A sentence imposed for a violation of the provisions of this Section shall not be subject to parole, probation, or suspension of sentence to the extent that the minimum sentence for a violation of a felony provision of R.S. 40:966 through 970 is not subject to parole, probation, or suspension of sentence.
The penalty provision for distribution of cocaine is La. R.S. 40:967(B)(4)(b):
Distribution, dispensing, or possession with intent to produce, manufacture, distribute, or dispense cocaine or cocaine base or a mixture or substance containing cocaine or its analogues as provided in Schedule II(A)(4) of R.S. 40:964 shall be sentenced to a term of imprisonment at hard labor for not less than two years nor more than thirty years, with the first two years of said sentence being without benefit of parole, probation, or suspension of sentence; and may, in addition, be sentenced to pay a fine of not more than fifty thousand dollars.
Employing both of the foregoing statutes, the Defendant's sentencing range for Count One was two to 45 years' imprisonment at hard labor, without benefit of parole, *528 probation or suspension of sentence for the first two years. The Defendant was also subject to a mandatory fine.
However, the State thereafter filed a habitual offender bill of information against the Defendant alleging that he was a fourth felony offender. Of the three predicate offenses alleged in the habitual offender bill, two were for distribution of cocaine, and one was for possession of cocaine. Since the Defendant's fourth felony and two of his prior felonies were violations of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, the Defendant was subject to the enhancement provisions of La. R.S. 15:529.1(A)(1)(c)(ii). That subpart provides for a mandatory life sentence, without benefit of parole, probation, or suspension of sentence. As to the fine mandated by La. R.S. 40:981.3, the Louisiana Supreme Court has held that the Habitual Offender Law does not authorize the imposition of a fine, but only provides for enhancement of the term of imprisonment. State v. Dickerson, 584 So.2d 1140 (La.1991) (per curiam); State v. Williams, 04-1016, p. 11 (La.App. 5th Cir.3/29/05), 901 So.2d 527, 533, writ denied, 05-1080 (La.12/9/05), 916 So.2d 1056.
The Defendant moved the trial court to depart from the mandatory sentence under the provisions of State v. Dorthey, 623 So.2d 1276 (La.1993). The court granted the motion. As evidenced by the waiver of rights form, the Defendant then admitted to the allegations in the habitual offender bill of information in exchange for a 30 year imprisonment at hard labor sentence without benefit of probation or suspension of sentence.
Defendant argues that despite the reduction of his sentence from life to 30 years the sentence is still excessive. He bases this argument on the fact that he was only 40 years old at the time of the offense, the amount of cocaine sold was very small, and he is an addict in need of treatment rather than incarceration for an extended period of time. We find the Defendant's argument that his sentence is excessive lacks merit.
It is first noted that the Defendant received his sentence as part of a plea agreement. La.C.Cr.P. art. 881.2(A) provides that, "[t]he Defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea." Since the imposed sentence is the product of a plea agreement, the Defendant is now precluded from raising a claim of excessiveness on appeal. State v. Stewart, 03-976, p. 9 (La.App. 5th Cir.12/30/03), 862 So.2d 1271, 1277.
Furthermore, appellate counsel requested that the habitual offender proceedings and sentencing not be transcribed. Absent the transcripts of those proceedings, there is nothing for this Court to review. Based on what is before us, we see nothing to indicate that the 30 year sentence imposed on the Defendant as a fourth felony offender is constitutionally excessive.

ERRORS PATENT DISCUSSION
The record was reviewed for errors patent. La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5th Cir. 1990) and we have found no errors that require corrective action.
Accordingly, for the reasons stated above, we affirm the Defendant's convictions for distribution of cocaine within 1000 feet of a religious building and distribution of cocaine, and his respective sentences, enhanced as a habitual offender, to 30 years imprisonment at hard labor without benefit of probation or suspension of sentence, and 15 years imprisonment at hard labor with the first two to be served *529 without benefit of parole, probation or suspension of sentence, to be served concurrently.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] While the record contains a written motion to suppress evidence, it does not contain a motion to suppress identification.
[2] Paul Smith is not the officer's actual name. Undercover narcotics agents generally use false names while working undercover as protection from retaliation.
[3] Sergeant Smith explained that a "twenty" is a street term for $20 worth of crack cocaine.
[4] The testimony regarding the April 15, 2003 undercover purchase alleged in Count Three of the bill of information is not discussed here, since the Defendant was acquitted of that charge.