989 So.2d 132 (2008)
STATE of Louisiana
v.
Jovan A. DECAY.
No. 07-KA-966.
Court of Appeal of Louisiana, Fifth Circuit.
June 19, 2008.
*134 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Andrea F. Long, *135 William C. Credo, III, Assistant District Attorneys, Gretna, Louisiana, for plaintiff/appellee.
Martin E. Regan, Jr., Karla M. Baker, Regan & Associates, P.L.C., New Orleans, Louisiana, for defendant/appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY, and SUSAN M. CHEHARDY.
THOMAS F. DALEY, Judge.
Defendant, Jovan A. Decay, appeals his convictions for possession of MDA, possession with intent to distribute cocaine, and fourth offense possession of marijuana. On appeal, he assigns the following errors:
1. Whether the trial court erred in denying the Motion to Sever and Motion in Limine.
2. Whether the trial court erred by not allowing defense counsel to cross examine Deputy Barrette regarding prior complaints that he used excessive force.
3. Whether the evidence was sufficient to convict Mr. Decay.
4. Whether the trial court erred by not declaring a mistrial.
5. Whether the trial court erred in denying the Motion for New Trial.
6. Whether Mr. Decay received an excessive sentence.
After thorough consideration, we affirm Mr. Decay's convictions and sentence.

PROCEDURAL HISTORY
The Jefferson Parish District Attorney filed a three-count Bill of Information against defendant. In count one, defendant was charged with possession of MDMA, a violation of LSA-R.S. 40:966 C. In count two, defendant was charged with possession with intent to distribute cocaine under LSA-R.S. 40:967 A. Count three charged defendant with fourth offense marijuana possession under LSA-R.S. 40:966 C. Defendant was arraigned on all charges on June 20, 2005, and pled not guilty.
Defendant was tried by a 12-person jury on November 14 and 15, 2006.[1] On November 15, 2006, before trial testimony began, the State orally amended count one to change "MDMA" to "MDA," which the prosecutor said is a derivative of MDMA.[2] Defendant was arraigned on the amended charge, and maintained his plea of not guilty. The jury returned verdicts of guilty as charged on each count. On February 15, 2007, the trial court heard and denied defendant's Motion for New Trial.
On March 1, 2007, the trial court sentenced defendant to five years at hard labor on count one. On count two, the court sentenced defendant to 15 years at hard labor and a $10,000 fine. On count three, the trial court sentenced defendant to 10 years at hard labor. The court ordered that the sentences be served concurrently with each other and with the misdemeanor sentences in district court case number 05-3112.
*136 On March 1, 2007, the State filed a habitual offender bill of information, alleging defendant to be a third felony offender. On that day, defendant stipulated to the allegations in the multiple bill. The trial court then vacated defendant's original sentence on count two, and in accordance with a sentencing agreement, imposed an enhanced sentence of 20 years at hard labor without benefit of probation and suspension of sentence, and without eligibility for good time. The judge further ordered that the habitual offender sentence run concurrently with his other sentences. Defendant made a timely oral Motion for Appeal.

FACTS
On the night of May 6, 2005, Detective Jason Barrette of the Jefferson Parish Sheriff's Office was on patrol in a marked police car in the Avondale area. At around 12:30 a.m., he was at the intersection of Butler Drive and Dexter, when he saw a blue Cadillac run a stop sign. The Cadillac turned northbound onto Butler, and Detective Barrette followed it. The car turned onto Dillard Drive, and Barrette made a traffic stop.
Defendant, the driver of the car, pulled into the driveway of a residence on Dillard and exited his vehicle. The officer left his police vehicle and began telling defendant he was being stopped for a traffic violation. Defendant hit the officer in the head with his fist. Barrette hit defendant back. He told defendant he was under arrest, and a struggle between the two followed. Barrette testified that defendant broke away from him and ran. The officer chased him on foot. He told defendant several times to stop, but defendant continued to flee. Barrette saw defendant drop a clear plastic bag on the ground as he ran. Barrette stopped to pick up the bag, and he found it contained white powder that appeared to be cocaine.
The officer chased defendant into the backyard of a residence. Barrette said he did not lose sight of defendant. Defendant stopped when he reached a fence, and assumed a fighting stance. The two men struggled again as Barrette attempted to handcuff defendant. Defendant broke free and tried to climb the fence.
Detective Barrette testified that he fired his taser at defendant, and the taser's darts struck him on his back and on the back of his head. (Id.). Defendant fell to the ground. Barrette instructed him to stay on his stomach. Defendant attempted to get up, and the officer tasered him two more times. At that point, defendant stayed on the ground, and Barrette was able to handcuff him. Defendant complained he was having trouble breathing, and he seemed to lose consciousness. Barrette testified that defendant appeared to him to be feigning the loss of consciousness, as he saw defendant surreptitiously looking at him. The officer nonetheless called for medical assistance, as well as for backup officers. Barrette testified that defendant did not require hospital care.
After backup officers arrived at the scene, Detective Barrette inspected the plastic bag defendant had dropped. Inside were nine small bags of what appeared to be powder cocaine, which Barrette believed were prepared for individual sale. The bag also contained three tablets of what appeared to be ecstasy. Barrette field tested the evidence and the results were positive for the presence of cocaine and ecstasy.
Once defendant was in custody and was placed in a police unit, Barrette returned to defendant's car. The driver's door was open, and from his position outside the car, the officer could see in plain view a marijuana cigarette in the ashtray. On Barrette's request, a K-9 officer with a narcotics dog searched for signs of additional *137 drugs in the car. The dog did not find any additional narcotics.
Barrette testified that crime scene officers arrived to process the scene and take photographs. Defendant's injuries were photographed.
Thomas Angelica of the Jefferson Parish Sheriff's Office crime lab testified that he examined the evidence seized in this case. He stated that the white powder in the nine clear plastic bags tested positive for the presence of cocaine. The off-white object was also positive for cocaine. Angelica testified that the three yellow tablets tested positive for MDA, which is a close cousin to MDMA, or ecstasy, a Schedule I controlled dangerous substance. Finally, Angelica testified that the vegetable matter contained in the partially burned cigarette tested positive for the presence of marijuana. Angelica's lab report was admitted as State's Exhibit 12.

ASSIGNMENT OF ERROR NUMBER THREE
Defendant argues that the evidence at trial was insufficient to support his convictions because Detective Barrette's testimony was refuted by two unbiased defense witnesses. The State responds that this is simply an issue of witness credibility; and the credibility of witnesses is a matter for the trier-of-fact which cannot be re-weighed on appeal.[3]
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia,[4] requires that a conviction be based on proof sufficient for any rational trier-of-fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt.[5]
In defendant's case, the State was required to prove the elements of three separate offenses: possession of MDA (LSA-R.S. 40:966 C), possession of cocaine with intent to distribute (LSA-R.S. 40:967 A(1)), and fourth offense possession of marijuana (LSA-R.S. 40:966 C, and LSA-R.S. 40:966 E(3)).[6] To support a conviction for possession of a controlled dangerous substance, the State must prove that the defendant knowingly possessed an illegal drug.[7] Guilty knowledge is an essential element of the crime of possession of contraband.[8] Since it is a state of mind, it need not be proven as fact; it may be inferred from the circumstances.[9]
*138 Possession may be established by showing that the defendant exercised either actual or constructive possession of the substance. A person not in physical possession of a drug is considered to be in constructive possession of the drug, even though it is not in his physical custody, when the drug is under his dominion and control.[10] The question of possession hinges on the particular facts of each case.[11]
The crime of possession with intent to distribute a controlled dangerous substance requires proof that the defendant knowingly and intentionally possessed the drug and that he did so with the specific intent to distribute it.[12] Specific intent is defined as that state of mind which exists when the circumstances indicate the offender actively desired the prescribed criminal consequences as reasonably certain to result from his act or failure to act.[13] The intent to distribute may be established by proving circumstances surrounding the defendant's possession which give rise to reasonable inferences of intent to distribute.[14] Factors that may give rise to a reasonable inference that defendant had the specific intent to distribute include: 1) previous attempts to distribute; 2) whether the drug was in a form consistent with distribution to others; 3) the amount of the drug; 4) expert or other testimony showing the amount found in the defendant's possession to be inconsistent with personal use only; and 5) paraphernalia evidencing an intent to distribute.[15] Mere possession of a drug does not evidence intent to distribute absent circumstances from which intent to distribute may be inferred unless the quantity is so large that no other inference is possible.[16]
Defendant does not claim that the State failed to prove the element of possession as to any of the three counts, or that the State failed to prove he had the intent to distribute cocaine. In any case, it appears the State provided sufficient evidence as to both possession and the intent to distribute. Detective Barrette's testimony that he was focused on defendant's hands during the chase because he thought defendant might have a weapon, that he saw defendant drop the plastic bag containing the cocaine and the MDA tablets, that he (Barrette) immediately retrieved the bag, and that he never lost sight of defendant during the chase, appears to be sufficient proof of possession as to counts one and two. As to count two, Barrette testified that the powder cocaine was individually packaged for sale. That is sufficient proof of defendant's intent to distribute. See State v. Davis,[17] in which the court found that an unusually large amount of cash found in the defendant's car and on his person, along with a loose rock of crack cocaine and 18 individually wrapped plastic bags each containing a rock of crack cocaine was sufficient to prove the defendant's intent to distribute. The court reasoned that "common sense" supported the *139 jury's findings.[18] Barrette's testimony that he found the marijuana cigarette in plain view in the car in which defendant was riding alone appears to be sufficient proof of possession as to count three.
Defendant put on two witnesses at trial in an attempt to discredit the officer's testimony. Linda Adams, a Jefferson Parish educator, testified that she lived on Dillard Drive in Avondale. Just after midnight on May 6, 2005, she was walking home from a neighbor's house when she saw defendant pull his car into a next door neighbor's driveway. She then saw a police car block the entrance to the driveway. The police car's lights and siren were not on. Defendant, whom she did not know before that night, exited his car. Without saying anything, the police officer threw defendant against his car. Defendant struggled with the police officer, and then he broke free and ran down Grambling Court. The police officer followed. Ms. Adams testified that Grambling Court curves, and once the two men went around the curve, she could not see them from her vantage point. Ms. Adams said she did not see defendant throw anything down, nor did she see the police officer stoop down to pick up anything.
Ms. Adams testified that she saw an ambulance pass by and go around the curve in the street. She also saw additional police officers arrive in the area and use flashlights to look around in the grass.
Joleen Anderson testified that she lived on Travis Drive in Avondale, and she worked as a security guard. Shortly after midnight on May 6, 2005, she was on Dillard Drive, walking home from a friend's house. She was crossing Grambling Street when she saw a blue Cadillac pull into a driveway. A police car then parked across the driveway's entrance so that it blocked in the Cadillac. The police car's siren and lights were not on. Ms. Anderson said the police officer ran up behind the Cadillac's driver and pushed him up against the car. The driver then ran across Dillard Street and up Grambling, and the officer chased him.
Anderson testified she did not see the man throw anything to the ground, nor did she see the officer stop and pick up anything. The man ran into the backyard of a residence. She stood across the street from that yard and watched what happened next. She was about 30 feet away from the two men. She saw a flash of light, as if someone was taking a photograph. The man was on his back, and she heard him scream "`Stop.'" The police officer was standing over the man, kicking him. Anderson saw a second flash of light. After a pause, there was a third flash of light. Then she did not hear anything.
Ms. Anderson testified that she did not see the man strike a fighting stance, nor did she see him hit the police officer. About 15-20 minutes later, an ambulance and police backup arrived. Police officers with flashlights searched yards in the area of Grambling and Dillard. The officers stayed there for one to one and one-half hours. One police officer came out of the side-yard of a residence and said, "`I found it. I found the dope.'" Ms. Anderson testified that there is a history in that neighborhood of "crooked cops" placing drugs on people. She watched the officers' activity that night because she wanted to see what they were looking for, and what they retrieved.
Ms. Anderson testified that on the day after the incident, she learned that defendant, the man who was chased by the officer, was the grandson of a woman who sells candy in the neighborhood. *140 Anderson gave her name and telephone number to defendant's grandmother, and offered to testify on defendant's behalf if she was needed. But she did not speak to police about what she had seen.
As defendant points out, there were some discrepancies between Detective Barrette's version of events and the accounts of the defense witnesses. Barrette testified that he activated his overhead lights and siren when he made the traffic stop. Neither Ms. Adams nor Ms. Anderson detected police lights or a siren. Barrette reported that defendant dropped a plastic bag containing narcotics, and that he (Barrette) picked it up. Adams and Anderson testified they did not see defendant drop anything, and that the officer did not pick up anything. Barrette testified that he tasered defendant in the back as he attempted to escape, and that he did not taser defendant's chest. Ms. Anderson testified defendant was lying on his back, and that the officer stood over him. While Ms. Anderson testified that she heard defendant screaming, Barrette said defendant did not scream; that he only made grunts and moans during their struggle.
Under the Jackson standard, a review of a criminal conviction record for sufficiency of evidence does not require the court to determine whether it believes the evidence at the trial established guilt beyond a reasonable doubt.[19] Rather, the reviewing court is required to consider the whole record and determine whether any rational trier-of-fact would have found guilt beyond a reasonable doubt.[20] The credibility of witnesses presenting conflicting testimony on factual matters is within the sound discretion of the trier-of-fact. The trier-of-fact can accept or reject, in whole or in part, the testimony of any witness.[21] It is not the function of the appellate court to second-guess the credibility of witnesses as determined by the trier-of-fact, or to reweigh the evidence absent impingement on the fundamental due process of law.[22]
Contrary to defendant's assertion, a rational juror could have found, based on the evidence at trial, that defendant was guilty beyond a reasonable doubt. The jurors in this case were free to find Barrette's testimony more credible than that of the defense witnesses, and they clearly did. It is possible that the jurors took into account the fact that Ms. Adams was not in a position to see much of what happened between defendant and Barrette, and that Ms. Anderson indicated a general distrust of police officers during her testimony.
Based on the foregoing, the evidence was sufficient under the Jackson standard to support defendant's convictions.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant complains that the trial court erred in denying his Motion to Sever count three of the bill of information from the other two counts. He argues the evidence of his three prior marijuana convictions likely led the jury to infer that he is of a criminal disposition. On the same basis, defendant also challenges the trial court's denial of his pre-trial motion in limine requesting that the three prior marijuana convictions be kept from the jury. The State responds that defendant fails to show he was prejudiced by the trial court's denial of the severance. The State points *141 out that, at trial, the parties stipulated to the existence of the three prior marijuana convictions, and that the judge gave a limiting instruction regarding the purpose of the prior convictions. Those measures, the State argues, were sufficient to prevent prejudice to defendant. The State also maintains that the joinder of the three offenses for trial served the ends of judicial economy.
On March 7, 2006, defendant filed a "Motion to Sever Counts," in which he asked that count three of the bill of information be tried separately. In his motion, defendant argued, "If count three is tried with the other counts, the jury will learn that the defendant has three prior drug convictions, which would be in violation of his fifth amendment rights and would greatly prejudice his rights to a fair trial."
On March 8, 2006, the trial court heard arguments on that motion. Defense counsel maintained that if count three was tried together with the other two counts, he would be deprived of his right against self-incrimination. Counsel further argued that the ends of judicial economy did not outweigh defendant's right to a fair trial. Counsel suggested that the most desirable resolution to the issue would be for the State to reduce the charge in count three to a misdemeanor first offense possession. The prosecutor responded that the State might have charged defendant with fifth or sixth offense marijuana possession, but had settled on a charge of fourth offense possession. The prosecutor stated that the facts of the case were uncomplicated, and that the jury would not be confused by the joinder of the three charges. The prosecutor also pointed out that the three offenses occurred within the same course of conduct, and the marijuana offense was res gestae as to the cocaine and MDA offenses. In conclusion, the prosecutor argued that considering the charges against defendant were all non-violent offenses, there was little likelihood that the jury would become inflamed by the trial of all three offenses together.
The trial court denied defendant's motion, reasoning, in part:
The Court finds that certainly, there is a risk of prejudice to this Defendant. However, the Court believes that based upon a limiting instruction which the Court will give to this jury both at the time of the presentation of that evidence and in closing arguments, and because the attorneys will have an opportunity to voir dire the prospective jurors with regard to this issue, that the Defendant Jovan Decay will be protected.
Defendant applied to this Court for supervisory writs, challenging the trial court's ruling. This Court denied the writ, stating:
"The writ application appears to be untimely on its face. Moreover, on the showing, we find no abuse of the trial court's discretion in denying relator's request for a severance. La.C.Cr.P. art. 495.1; State v. Morris, 99-3075, pp. 3-8 (La.App. 1 Cir. 11/3/00)[,] 770 So.2d 908, 913-915."

State v. Jovan Decay, 06-256 (La.App. 5 Cir. 4/10/06) (unpublished writ).
At the commencement of trial, the defense made an oral Motion in Limine, requesting that the court bar the State from presenting evidence of defendant's three prior marijuana convictions. The State opposed the Motion, arguing that the three prior convictions were needed to prove the elements of fourth offense marijuana possession. The trial court denied the Motion in Limine, noting that the State had the burden of proof at trial, and that it was entitled to submit evidence of the three prior convictions in order to meet its burden.
*142 LSA-C.Cr.P. art. 493 permits the joinder of offenses that "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan[,]" provided the offenses are triable by the same mode of trial. The three charges against defendant in this case arose from the same transaction, and were triable by the same mode of trial. They were, therefore, properly charged in the same bill of information. A defendant properly charged in the same indictment with two or more offenses in accordance with LSA-C.Cr.P. art. 493 may nevertheless move for a severance of the offenses under LSA-C.Cr.P. art. 495.1, which states: "If it appears that a defendant or the [S]tate is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires."
In determining whether prejudice may result from the joinder, the court should consider whether the jury would be confused by the various counts; whether the jury would be able to segregate the various charges and evidence; whether the defendant could be confounded in presenting his various defenses; whether the crimes charged would be used by the jury to infer a criminal disposition, and finally, whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile.[23]
The defendant has a heavy burden of proof when he alleges prejudicial joinder.[24] A motion to sever under LSA-C.Cr.P. art. 495.1 is addressed to the sound discretion of the trial court and the ruling should not be disturbed on appeal absent a showing of an abuse of discretion.[25]
In the instant case, it does not appear defendant was prejudiced by the joinder of the three offenses for trial. There was little chance the jury was confused by the joinder of the three offenses. The facts of the case were not complex, the State only put on two witnesses, and the charges were clearly delineated on the verdict form. The joinder of the charges did not prevent defendant from putting on a sound defense at trial. The charged offenses were not crimes of violence, and it is, therefore, unlikely that the jury was inflamed by the inclusion of count three. Additionally, the trial court gave the jury the following limiting instruction:
The prior convictions alleged in the Bill of Information are alleged solely to enhance the penalty should you find that the defendant possessed marijuana on the occasion charged in this Bill of Information. You are not to consider the prior convictions or in any way take them into account in assessing the defendant's guilt or innocence of the conduct in this Bill of Information.
In State v. Harris,[26] this Court found that the trial court did not err in denying the defendant's motion to sever five counts *143 of cocaine distribution for trial. This Court reasoned that, although the five offenses occurred on different days during a six-week period, they were all of the same or similar character. They each involved the defendant selling crack cocaine to undercover officers, they occurred in the same general area, four of five counts involved sale of narcotics to the same undercover officer, and counts were triable by the same mode of trial. This Court further found that, given the nature of the evidence, it did not appear that the jury inferred a criminal disposition or became hostile toward the defendant.[27]
Based on the foregoing, defendant did not meet his heavy burden of showing he was prejudiced by the joinder of the offenses for trial. Thus, the trial court did not abuse its broad discretion in denying defendant's Motion to Sever counts and his Motion in Limine.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant complains that the trial court deprived him of his Sixth Amendment right of confrontation by prohibiting him from cross-examining Detective Barrette about his disciplinary record for use of excessive force. The State responds that defendant was not prejudiced by the trial court's ruling, arguing that defendant's proffer of evidence did not show Deputy Barrette had ever been disciplined for excessive use of force.
The record suggests defendant's trial strategy was to show that Detective Barrette's testimony was unreliable. One of the ways in which defendant intended to discredit Barrette was by showing the officer had used excessive force on him and on other suspects. In his opening statement to the jury, defense counsel said:
You're going to hear that information, ladies and gentlemen, and you're going to ask yourself: Well, if what the defense is saying is true, you know, why would this police officer lie?
And I'm going to tell you, ladies and gentlemen, because this police officer has been investigated previously for using excessive force
. . . .
and with tazers [sic].
The State objected to any reference to prior investigations involving Barrette, unless defendant had evidence to support such a claim. Defense counsel responded:
I know for a fact that he killed one man with a tazer [sic] and I believe two, and he was under investigation by the Sheriff's Office for that and that's his motive for lying, that he tazered [sic] this man, almost killed him and then had to make up a reason why he tazered [sic] him.
Counsel further stated that if necessary, he would question Barrette about it. The prosecutor responded that he was unaware of any disciplinary investigation involving Barrette, and he again objected to defense counsel's allegations. Even if counsel's allegations were true, the prosecutor argued, they were not relevant to defendant's case. Defense counsel responded that he intended to use the information to show Barrette had a motive for lying. The trial court ruled that the defense could not question the officer about prior disciplinary actions because the code of evidence prohibits the use of such evidence to attack a witness's credibility.
Over the State's objection, the trial court allowed the defense to question Barrette out of the jury's presence, and to proffer the testimony. Defense counsel questioned the officer as follows:

*144 Q. Deputy, have you ever had the occasion while working as a deputy sheriff either for Westwego or for Jefferson Parish to deploy and use your tazer [sic] weapon?
A. Yes.
Q. Have you ever killed anyone with your tazer [sic] weapon?
A. No.
Q. Have you ever been investigated for killing someone with your tazer [sic] weapon?
A. No.
Q. Have you ever had any sort of review by any member of the Jefferson Parish Sheriffs Office regarding complaints of using your tazer [sic] weapon?
A. No.
Q. Have you ever been formally disciplined by the Jefferson Parish Sheriffs Office for any reason?
A. Yes, I have a written reprimand for it.
Q. For what?
A. For taking my vehicle out of the Parish, and I believe a suspension day for missing work.
Q. Have you ever been accused of unlawful use or excessive use of your tazer [sic] weapon?
A. No.
After defense counsel completed his proffer, he continued his opening statement.
Both the Sixth Amendment to the United States Constitution and Article I, § 16 of the Louisiana Constitution guarantee a criminal defendant the right to present a defense. The primary purpose of the right of confrontation is to secure for the accused the opportunity of cross-examination, since it is the principal way to test the believability and truthfulness of a witness's testimony and to impeach or discredit a witness.[28] "Cross-examination has been termed `the principal means by which believability and truthfulness of testimony are tested.'"[29]
LSA-C.E. art. 611(B) provides: "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility." The trial court may exercise reasonable control over the manner of cross-examination in order to: (1) ensure the effectiveness of the interrogation; (2) prevent the unnecessary consumption of time; and (3) protect witnesses from harassment or undue embarrassment. Subject to those limitations, the cross-examiner is permitted to delve into the witness's story to test the witness's perceptions and memory and to impeach, or discredit, the witness.[30] The trial court's ruling regarding the scope and extent of cross-examination should not be disturbed absent an abuse of the court's broad discretion.[31]
In the instant case, defendant's proffer did not show that Detective Barrette had been subject to disciplinary actions for abusing arrestees with a taser. Thus, cross-examining the officer regarding that issue at trial would not have aided *145 defendant in attacking his credibility. The trial court did not abuse its discretion in disallowing cross-examination of the officer regarding the alleged disciplinary actions. A defendant's confrontation rights do not require a trial court to permit the introduction of evidence that is irrelevant or has so little probative value that it is substantially outweighed by other legitimate considerations in the administration of justice.[32]

ASSIGNMENT OF ERROR NUMBER FOUR
Defendant contends that the trial court erred in failing to grant a mistrial when the prosecutor made a reference in closing argument to defendant's failure to testify. The State responds that the comment at issue, when viewed in context, did not constitute a reference to defendant's failure to testify at trial, and thus did not necessitate a mistrial.
"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the . . . district attorney . . . in argument, refers directly or indirectly to . . . [t]he failure of the defendant to testify in his own defense[.]" LSA-C.Cr.P. art. 770(3). When a direct reference is made by the State to the defendant's failure to take the stand, a mistrial should be declared regardless of whether the State intended for the jury to draw unfavorable inferences from the defendant's silence.[33] But when the State makes an indirect reference to the defendant's failure to testify, the trial court must determine whether the remark's intended effect on the jury was an impermissible reference to the defendant's failure to testify or a permissible reference in a general statement that the State's case was unrebutted.[34] An indirect reference only requires a mistrial if the comment was intended to draw the jury's attention to the defendant's failure to testify.[35]
The mandatory mistrial provisions of Article 770, which encompass a prosecutor's direct or indirect comment on the defendant's failure to testify, are directives to the trial judge and do not preclude an appellate court from conducting harmless error analysis.[36] A conviction will not be reversed due to improper remarks during closing argument unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict.[37] In making its determination, the appellate court should give credit to the good sense and fairmindedness of the jury that has seen the evidence and heard the argument, and has been instructed that the arguments of counsel are not evidence.[38]
Defendant specifically complains of the prosecutor's comment, "Is he telling you anything?" The sentence was a small part of a broader remark:

*146 We all see things from the perspective of who and what we are. I see it from the perspective of a prosecutor. I can argue against drugs all day long, here, in high schools, colleges, it doesn't matter to me, because I see every day what it does to us. I see every day what it does to people like him (indicating). . . .
He is telling you. Is he telling you anything? . . . This case is telling you that people are going to live the way they want to live until they are stopped. That is basically what we have here. In Cool Hand Luke they called it a failure to communicate. We have a failure to communicate. People who live the way they want until you stop it.
At the conclusion of the State's argument, defense counsel movedout of the jury's hearingfor a mistrial. He argued the prosecutor's remarks constituted a comment on defendant's failure to testify. The prosecutor responded that the remark should be viewed in the context of his entire argument. The prosecutor further argued that even if the comment were construed as a reference to defendant's failure to testify, it was harmless error.
The trial court denied defendant's mistrial motion, stating:
The Court believes that in the context of the closing argument by the State, the reference was made to what Mr. Decay's actions on the night of the offense were telling the jury.
The Court also has instructed in the preliminary instructions to the jury that the Defendant does not have to testify. The Court also will instruct the jury in the instructions that will be read to the jury after closing argument, that the Defendant does not have to testify.
The trial court did not err in denying defendant's mistrial motion. As the State maintains, the prosecutor's comments, when viewed in the context of the entire passage, do not constitute a reference to defendant's failure to testify. Rather, the prosecutor seemed to be commenting on defendant's proclivity for living in the drug culture. Moreover, the trial court instructed the jury that the arguments of counsel are not evidence. The court also instructed the jury that the State has the burden of proof at trial, and that the defendant has a right not to testify. This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER FIVE
Defendant maintains the trial court erred in denying his Motion for New Trial. The State argues that defendant has not properly briefed this assignment, and it is, therefore, abandoned. Alternatively, the State argues that the trial court did not abuse its discretion in denying defendant's Motion for New Trial.
Rule 2-12.4 of the Uniform Rules, Courts of Appeal, provides that the appellant's brief must contain "a specification or assignment of alleged errors relied upon, the issues presented for review, an argument confined strictly to the issues of the case, . . . giving accurate citations of the pages of the record and the authorities cited[.]" The rule further states that the court "may consider as abandoned any specification or assignment of error which has not been briefed." Restating an assigned error in brief without argument or citation of authority does not constitute briefing.[39]
In State v. Fernandez, 03-987 (La. App. 5 Cir. 12/30/03), 864 So.2d 764, 770, this Court found that the defendant failed to brief his position where he merely asserted his position, but failed to include *147 argument or any legal citation in support thereof. The Fernandez court found that the assertions presented nothing for review on appeal. In Fernandez, 03-987 at 9, 864 So.2d at 770, the defendant simply provided two sentences restating his assignment of error. Defendant here provides something more than a mere restatement of the assignment. Although he does not provide legal authority for his assertions, he does supply facts from the record and record references. We find this sufficient to satisfy the requirements of Rule 2-12.4.
In his "Motion and Memorandum for a New Trials [sic]," defendant noted that Detective Barrette testified he had tasered defendant on the back, but not on his chest. Defendant complained that prior to trial, he gave his trial counsel, James Williams, photographs depicting taser marks on his chest, but that Williams lost the photographs. According to defendant, those photographs would have proven Barrette gave perjured testimony. Defendant further noted that he filed a complaint against Barrette with the internal affairs division of the Jefferson Parish Sheriff's Office, but that his trial counsel had failed to obtain a record of this complaint to introduce at trial. Defendant complained that counsel's failure to offer those items in evidence undermined the fairness of his trial.
The trial court held a hearing on defendant's new trial motion on February 15, 2007. Defendant's appellate counsel, Martin Regan, represented him. Defendant testified Barrette tasered him in the chest three times[40] while he was lying on his back. Defendant said he was in jail for four to five days following his arrest. Immediately after his release he reported Detective Barrette to the internal affairs division of the sheriff's office. Defendant identified Defense Exhibit 1 as a copy of his statement to internal affairs. The defense also introduced a copy of Detective Barrette's statement to internal affairs.
Defendant testified that internal affairs personnel photographed the two taser marks on his chest. He identified Defense Exhibits 2, 3, and 4 as photographs of him taken at internal affairs. Defendant stated he also had his own photographs taken of his injuries. He gave his personal photographs to his trial counsel, James Williams, prior to trial. He expected Williams to produce those photographs at trial, but the attorney did not bring them to court. Those personal photographs were not produced at the hearing. Defendant testified that he attempted to get copies of the internal affairs photographs prior to trial, but he was told they were not public records, and an attorney would have to request them.
Mr. Regan argued that the gist of defendant's new trial motion was that trial counsel's failure to have the photographic evidence in court deprived defendant of a fair trial. The prosecutor objected, arguing that this was an ineffective assistance of counsel argument, and it was not properly raised in a Motion for New Trial. The trial judge commented that he did not think the issue was included in the enumerated grounds for new trial listed in LSA-C.Cr.P. art. 851. Regan then asked that the court view the claim under the "ends of justice" grounds of Article 851(5).
*148 Mr. Regan argued that Detective Barrette gave perjured testimony, and that if defendant's trial counsel had introduced the photographs to show the officer was lying, the outcome of the trial might have been different. The prosecutor responded that nothing in defendant's argument provided grounds for a new trial under Article 851. The prosecutor further maintained that defendant's claim was one of ineffective assistance of counsel, which was properly raised on post-conviction or direct appeal.
The trial judge ruled the evidence was not sufficient to support the granting of a new trial. The judge noted that defendant did not provide any medical testimony to show that the marks shown in the internal affairs photographs were actually caused by a taser. He could not, therefore, accept the photographs as evidence that defendant was tasered on his chest. The judge further noted that defendant did not provide testimony from his trial counsel, Mr. Williams.
Defendant now raises the same arguments he raised below regarding Mr. Williams's performance at trial. This is an ineffective assistance of counsel claim, most appropriately raised in an application for post-conviction relief.[41] Moreover, as the trial court stated, the claim does not appear to fall under any of the five enumerated grounds for new trial under LSA-C.Cr.P. art. 851.
Defendant further argues on appeal that his internal affairs complaint and photographs render the evidence at trial insufficient to support his conviction, since the State's case hinged on the unreliable testimony of Detective Barrette. Since the evidence to which defendant refers was not admitted or proffered at trial, there is nothing for this Court to review on the issue of sufficiency. This matter is more properly reviewed in an application for post-conviction relief.

ASSIGNMENT OF ERROR NUMBER SIX
Defendant argues that his 20-year habitual offender sentence is statutorily excessive in that the trial court failed to consider mitigating factors or to properly tailor the sentence to fit the facts of his case. LSA-C.Cr.P. art. 894.1. The State responds that defendant is barred by LSA-C.Cr.P. art. 881.2 from challenging his sentence because it was imposed as part of a sentencing agreement.
The record shows that defendant did, in fact, agree to a 20-year sentence when he stipulated to the allegations in the habitual offender bill. Under LSA-C.Cr.P. art. 881.2(A)(2), a defendant "cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea." This Court has consistently recognized that this article precludes a defendant from seeking review of a sentence imposed as part of a sentencing agreement.[42] Because defendant received a sentence imposed in conformity with a sentencing agreement that was set forth in the record at the time of the habitual offender admission, he is barred from challenging his sentence as excessive. In any case, defendant's sentence was the minimum sentence for a third felony offender under LSA-R.S. 15:529.1 A(1)(b)(i) and LSA-R.S. 40:967 B(4)(b).
This assignment of error merits no consideration.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent.[43] There is one error that requires corrective action.
*149 The transcript and commitment reflect the trial judge denied good time eligibility when imposing the habitual offender sentence.[44] LSA-R.S. 15:571.3 C prohibits diminution of sentence under certain circumstances. Specifically, LSA-R.S. 15:571.3 C(1)(s) provides that an inmate in the custody of the Department of Corrections shall not be allowed good time if he has been convicted one or more times of "[a] violation of the Louisiana Controlled Dangerous Substances Law which is a felony." Also, LSA-R.S. 15:571.3 C(2) and C(3) prohibit diminution of sentence for inmates sentenced as habitual offenders. Both of those subparts apply to defendant in this case. But those provisions are directed to the Department of Corrections, not to the district courts. The Louisiana Supreme Court has held that the district court has no role in determining eligibility for diminution of sentence pursuant to LSA-R.S. 15:571.3 C.[45] In State ex rel. Simmons v. Stalder,[46] the Supreme Court found that the trial court erred in pronouncing the defendant's habitual offender sentence without benefit of good time.
LSA-C.Cr.P. art. 882 A provides that an illegal sentence may be corrected at any time by the court that imposed the sentence or by the appellate court on review. Accordingly, we remand the case and order the trial court to vacate the prohibition on good time eligibility and to make an entry in the minutes reflecting this change.[47]
AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] The court simultaneously conducted a bench trial on defendant's related misdemeanor charges of resisting arrest and battery of a police officer (district court case number 05-3112). The trial court found defendant guilty on both of those charges, but those convictions are not at issue in this appeal.
[2] MDA is an acronym for methylenedioxyamphetamine, which is similar tobut not the same asecstasy. See United States v. Morgan, 385 F.3d 196, 202 n. 5 (2nd Cir. 2004). Thomas Angelica, an expert in forensic identification of controlled dangerous substances, testified that MDA is a "close cousin" to MDMA.
[3] When issues are raised on appeal as to sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine sufficiency of the evidence. When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any issues regarding trial errors become moot. State v. Hearold, 603 So.2d 731, 734 (La. 1992); State v. Guillard, 04-899, p. 9 (La.App. 5 Cir. 4/26/05), 902 So.2d 1061, 1070, writ denied, 05-1381 (La. 1/13/06), 920 So.2d 233.
[4] 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
[5] State v. Juluke, 98-0341 (La. 1/8/99), 725 So.2d 1291 (per curiam); State v. Jones, 05-840, p. 7 (La.App. 5 Cir. 3/28/06), 927 So.2d 514, 519.
[6] At trial the parties stipulated that defendant had previously been convicted of possession of marijuana three times, in district court cases 98-2896, 02-3349, and 00-3075. Certified copies of those convictions were admitted in evidence as State's Exhibits 1, 2, and 3.
[7] State v. Lewis, 04-1074, p. 7 (La.App. 5 Cir. 10/6/05), 916 So.2d 294, 299, writ denied, 05-2382 (La.3/31/06), 925 So.2d 1257.
[8] Id.
[9] State v. Major, 03-3522, pp. 8-9 (La. 12/1/04), 888 So.2d 798, 803; State v. Lewis, supra.
[10] Lewis, supra.
[11] Lewis, 04-1074 at 8, 916 So.2d at 299.
[12] State v. Gilbert, 02-922, p. 5 (La.App. 5 Cir. 1/28/03), 839 So.2d 250, 253-54.
[13] LSA-R.S. 14:10.
[14] State v. Washington, 03-1135, p. 5 (La.App. 5 Cir. 1/27/04), 866 So.2d 973, 977.
[15] Id.
[16] State v. Hearold, 603 So.2d at 735-736.
[17] 06-1330, pp. 9-10 (La.App. 4 Cir. 4/25/07), 958 So.2d 713, 719, writ granted in part on other grounds, 07-1208 (La. 12/14/07), 970 So.2d 982 (per curiam).
[18] Id.
[19] State v. Hebert, 05-1004, pp. 8-9 (La.App. 5 Cir. 4/25/06), 930 So.2d 1039, 1046.
[20] Id.
[21] State v. Baker, 01-1397, pp. 4-5 (La.App. 5 Cir. 4/30/02), 816 So.2d 363, 365.
[22] Id.
[23] State v. Washington, 386 So.2d 1368, 1371 (La.1980); State v. Williams, 05-317, pp. 19-20 (La.App. 5 Cir. 11/29/05), 918 So.2d 466, 477-78, writ denied, 06-0638 (La. 10/6/06), 938 So.2d 64.
[24] Id.
[25] State v. Demise, 98-0541, p. 7 (La.4/3/01), 802 So.2d 1224, 1232, cert. denied, 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001); State v. Simmons, 03-1458, p. 5 (La.App. 5 Cir. 5/26/04), 875 So.2d 1018, 1021, writ denied, 04-1702 (La. 11/19/04), 888 So.2d 194.
[26] 03-710 (La.App. 5 Cir. 2/23/04), 868 So.2d 886, writ denied, 04-0675 (La.9/24/04), 882 So.2d 1166.
[27] Id., 03-710 at 9-10, 868 So.2d at 893.
[28] State v. Toussaint, 07-353 (La.App. 5 Cir. 12/11/07), 974 So.2d 698, 702.
[29] State v. Draughn, 05-1825, p. 47 (La. 1/17/07), 950 So.2d 583, 616, cert. denied, ___ U.S. ___, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007), quoting State v. Robinson, 01-0273, p. 6 (La.5/17/02), 817 So.2d 1131, 1135.
[30] State v. Draughn, 05-1825 at 47-48, 950 So.2d at 616.
[31] Draughn, 05-1825 at 48, 950 So.2d at 616.
[32] LSA-C.E. art. 403; State v. Mosby, 595 So.2d 1135, 1138 (La. 1992); State v. Brasseaux, 05-41, p. 19 (La.App. 5 Cir. 12/13/05), 919 So.2d 738, 749.
[33] State v. Theriot, 07-71, p. 16 (La.App. 5 Cir. 6/26/07), 963 So.2d 1012, 1021-22, writ denied, 07-1598 (La.2/1/08), 976 So.2d 715.
[34] Id.
[35] State v. Lai, 04-1053, p. 7 (La.App. 5 Cir. 4/26/05), 902 So.2d 550, 560, writ denied, 05-1681 (La.2/3/06), 922 So.2d 1175.
[36] State v. Thomas, 05-2373 (La.4/17/06), 926 So.2d 490 (per curiam).
[37] State v. Jackson, 04-293, p. 4 (La.App. 5 Cir. 7/27/04), 880 So.2d 69, 73, writ denied, 05-0232 (La.5/6/05), 901 So.2d 1094.
[38] Id.
[39] State v. Lauff, 06-717, p. 9 (La.App. 5 Cir. 2/13/07), 953 So.2d 813, 819.
[40] The trial judge said it was his understanding that a taser fires a cartridge with two darts. Once the darts are embedded in the target's skin, the user activates the taser, releasing a jolt of electricity. The parties stipulated that in defendant's case, the taser had two darts, which were fired a single time. The taser was then activated by the officer three times.
[41] See State v. Jones, 05-840, p. 15 (La.App. 5 Cir. 3/28/06), 927 So.2d 514, 523.
[42] State v. Robinson, 04-1294, pp. 4-5 (La. App. 5 Cir. 4/26/05), 904 So.2d 10, 12.
[43] LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
[44] Before accepting defendant's stipulation to the habitual offender bill, the trial judge informed him that his sentence would be served without the benefit of good time. Defendant said he understood that.
[45] Accord, State ex rel. Hebert v. State, 03-2474 (La.10/1/04), 883 So.2d 1003; State v. Narcisse, 97-3161 (La.6/26/98), 714 So.2d 698.
[46] 93-1852 (La. 1/26/96), 666 So.2d 661.
[47] See State ex rel. Hebert v. State, supra; State v. Sam, 05-88, pp. 13-14 (La.App. 5 Cir. 5/31/05), 905 So.2d 379, 387, writ denied, 05-2100 (La.3/10/06), 925 So.2d 510.