FREDERICKA HOMBERG WICKER, Judge.
pThis is a criminal proceeding in which the defendant/appellant Michael B. Woods appeals his convictions and sentences for simple burglary of an inhabited dwelling, possession of hydrocodone, and possession of alprazolam. He assigns as sole error the trial court’s refusal to sever the possession of hydrocodone and possession of alprazolam charges from the charge of simple burglary of an inhabited dwelling. We affirm the convictions and sentences.
PROCEDURAL HISTORY
On July 11, 2007, the Jefferson Parish District Attorney’s office filed a bill of information charging the defendant with one count of possession of hydrocodone in violation of La. R.S. 40:967(C), one count of possession of alprazolam in violation of La. R.S. 40:969(C), and one court of simple burglary of an inhabited dwelling in viola *250 tion of La. R.S. 14:64.2. The defendant pleaded not guilty at arraignment and filed a motion to sever the possession of hydro-codone |aand possession of alprazolam charges. Before the April 16, 2008 trial commenced, the district court denied the defendant’s motion to sever the drug possession charges from the burglary charge. After a one day trial, the defendant was found guilty as charged on all counts. The trial court sentenced the defendant to six years imprisonment at hard labor on the simple burglary charge, five years imprisonment at hard labor on the possession of hydrocodone charge, and five years imprisonment at hard labor on the possession of alprazolam charge, all to be served consecutively. The trial court thereafter granted the defendant’s timely filed motion for appeal.
FACTS
The defendant was charged in connection with the July 24, 2007 burglary of a residence located at 518 Montgomery Avenue in Metairie.
On that day, Juan Santos, who lives down the street at 520 Montgomery Avenue, was in his front yard with his thirteen year old son, Juan Thompson, who was mowing the lawn. Juan Santos’s home is situated at the corner of Montgomery and Hodgson Avenues. Juan Thompson testified that while in the front yard he saw a man, later identified as the defendant, walking down Montgomery Avenue in a direction away from Hodgson Avenue. Thompson stated that he saw the man walk to the side of 513 Montgomery Avenue through the driveway and next heard a loud banging noise. Thompson did not see the defendant enter the house, but he testified that he was “pretty sure” that the defendant had broken into 513 Montgomery Avenue. Santos was familiar with the owner of the residence, whom he identified as “Roger.”
Approximately fifteen minutes after Thompson and Santos lost sight of the defendant, Roger Falcon, the owner of 513 Montgomery Avenue, returned from a fishing trip with the defendant’s brother. Falcon testified that when he arrived |4home, he found that his door had been smashed and was in pieces. Falcon stated that he entered the residence and saw the defendant (a man he had known for approximately thirty years) standing in his living room. Falcon screamed at the defendant and asked what he was doing in his living room, to which the defendant responded that he was looking for something to steal. In response, Falcon testified that he walked outside and called the police from his cellular phone.
Tina Lafleur was standing outside her home on Montgomery Avenue on that day when Falcon returned home. She testified that she saw Falcon pull into his driveway and walk to the side of his house. Lafleur recalled that Falcon yelled, “What the hell” as he approached the side door to his house. Lafleur then heard Falcon scream, “what the f— are you doing in my house” and observed Falcon walk outside and use his cell phone.
After Falcon called the police, the defendant left Falcon’s home and walked in the direction of Hodgson Avenue. La-fleur testified that she tried to tell the defendant not to leave because the police had been called, but he ignored her request and continued toward Hodgson. Lafleur recalled that she saw the defendant take a right at the corner and head down Hodgson in the opposite direction of Montgomery. Both Juan Thompson and Juan Santos testified that the defendant walked approximately three or four blocks down Hodgson and entered a white sport utility vehicle.
Eric Larotunda testified that on the date of the burglary, the defendant asked *251 him for a ride to the local Rite-Aid. At the time, Larotunda owned a white Ford Explorer sport utility vehicle and lived on Oriole Street, on the corner of Montgomery Avenue and Oriole Street and four blocks from the corner of Montgomery and Hodgson Avenues. Larotunda agreed to give the defendant a ride because the two were next door neighbors. The defendant bought some |r,cigarettes at Rite-Aid and Larotunda began to drive him home. However, before the defendant and Laro-tunda returned to Larotunda’s home, the Jefferson Parish Sheriffs Office stopped the Explorer.
Jefferson Parish Sheriffs Deputy Edward Ducos responded to the burglary. Ducos learned from witnesses that the perpetrator had entered a white sport utility vehicle and immediately put the information out on the radio, which led to the stop of Larotunda’s Explorer approximately ten minutes later. Ducos asked Falcon if anything had been stolen from the house. Falcon responded that he was not yet sure. Ducos also asked Falcon if he was missing any money from the house. Falcon told Ducos that the only money that he kept in the house were two dollar bills and quarters that had been given to him by his mother in 1976.
Jefferson Parish Sheriffs Deputy Abraham Andino testified that he stopped a white Ford Explorer while responding to the burglary. Approximately five to ten seconds after Andino had stopped the Explorer, Sergeant Dave Darwin arrived on the scene. Darwin testified that he saw the defendant bend down, throw something under the Explorer, and try to go into his pockets again. At that point, Darwin tried to grab the defendant and spin him around, but both men tripped and fell against the Explorer. The defendant continued to resist, even after Andino assisted Darwin in placing the defendant on the ground. Eventually, Andino had to deploy his taser multiple times to subdue the defendant. After subduing the defendant, Andino saw assorted property and a “bunch of pills” in the area where the defendant had struggled with himself and Darwin. Andino testified that he recovered both white and light green oblong pills from the scene of the struggle. Andi-no also recovered some loose change and three two dollar bills from the defendant’s right front pocket.
| (¡After Officer Ducos learned that the defendant had been apprehended, he took Falcon to the scene. Falcon positively identified the defendant as the man that had been in his house when he had arrived home. Falcon was also able to identify both the two dollar bills and loose change as money that his mother had given him in 1976 to mark the bicentennial.
At trial, Daniel Waguespack testified on behalf of the state.[1] Waguespack testified that the testing performed on fourteen white oblong tablets recovered from the defendant indicated that they contained alprazolam, a controlled dangerous substance. Waguespack further testified that the testing performed on the five recovered light green tablets indicated that they contained hydrocodone, a controlled dangerous substance.
ASSIGNMENT OF ERROR
The defendant assigns a single error to the proceedings below, namely, that the trial court erred in denying his motion to sever the burglary charge from the possession of hydrocodone and possession of al-prazolam charges. Specifically, the defendant argues that the trial court’s failure to sever the drug possession charges caused *252 the jury to infer his guilt based on facts unrelated to the primary burglary offense and thereby prejudiced him. The defendant further avers that the drug possession charges have no relevance to the burglary charge, that there was no testimony showing that the drugs were in Falcon’s house at the time of the burglary, and that there is a high probability that the jury found him guilty because the drug charges were not tried separately from the burglary charge.
La. C. Cr. P. art. 493 permits the join-der of offenses if the offenses charged “are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a 17common scheme or plan” and the offenses are triable by the same mode of trial. Felony offenses that are not triable by the same mode of trial may still be joined in the same indictment under the conditions specified in La. C. Cr. P. art. 493.2, which provides:
[Ojffenses in which punishment is necessarily confinement at hard labor may be charged in the same indictment or information with offenses in which the punishment may be confinement at hard labor, provided that the joined offenses are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.
Cases joined under article 493.2 must be tried “by a jury composed of twelve jurors, ten of whom must concur to render a verdict.” In determining whether two charged offenses should be severed, the trial court may consider whether evidence of one offense would have been admissible as other crimes evidence at the trial of the other offense under State v. Prieur, 277 So.2d 126 (La.1973) and La. C.E. art. 404(B)(1). See State v. Lyles, 03-141 (La. App. 5 Cir. 9/16/03) 858 So.2d 35, 45.
A defendant properly charged in the same indictment with two or more offenses pursuant to La. C. Cr. P. art. 493 or art. 493.2 may nonetheless move for a severance of offenses under La. C. Cr. P. art. 495.1, which provides: “[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.”
The burglary charge and the drug possession charges were therefore properly joined. The burglary charge required that the jury be composed of twelve members but the drug possession charges required that the jury consist of six members. See La. C. Cr. P. art. 782(A); La. R.S. 40:967(C) (possession of |Rhydrocodone punishable by imprisonment “with or without” hard labor); La. R.S. 40:969(C) (possession of alprazolam punishable by imprisonment “with or without” hard labor). The drug possession charges were therefore triable by a different mode of trial than the burglary charge. However, as aforementioned, all offenses joined under article 493.2 must be tried “by a jury composed of twelve jurors, ten of whom must concur to render a verdict.” According to the record, the defendant was tried by a jury of twelve members, all of whom concurred in guilty verdicts on all three charged offenses.
In addition, the alprazolam and hydroeo-done pills would have been admissible at the defendant’s trial had the court severed the offenses. The Supreme Court requires a close connexity of res gestae or integral act evidence to insure that “the purpose served by admission of other crimes evidence is not to depict the defen *253 dant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place.” State v. Noten, 2001-1818 (La.6/25/01), 791 So.2d 607, 608-09 (per curiam) (quoting State v. Colomb, 98-2813, p. 3 (La.10/1/99), 747 So.2d 1074, 1076). Here, the story of how the alprazo-lam and hydrocodone were recovered from the defendant can only be told in the context of his capture by police. The facts of the instant case are akin to State v. Decay, 07-966 (La.App. 5 Cir. 6/19/08), 989 So.2d 132. In Decay, the defendant punched a police officer during a traffic stop and ran into a nearby yard. Decay, 989 So.2d at 136. The police officer saw the defendant drop several bags containing an off-white' powder and continued the pursuit. Id. The defendant refused to stop, but was eventually tasered and brought into custody. After searching the defendant’s car, officers discovered a marijuana cigarette. Id. The bags that the defendant had dropped in the yard contained cocaine and methylenedioxyamphetamine, a close analogue of ecstacy. The defendant wanted lato sever the marijuana charge from the other two charges, arguing that his three prior marijuana convictions would prejudice him in the eyes of the jury. At the hearing on the motion to sever, the prosecutor argued that the facts of the individual offenses were easy to comprehend and that the marijuana offense was res gestae as to the other two offenses. Id. at 141. The trial court denied the motion, and this Court agreed. Id. at 142. Similarly, in this case, the defendant burgled a house which was alleged to contain controlled dangerous substances. After trying to dispose of the alprazolam and hydrocodone, he struggled with police and had to be subdued. Later, the officers recovered the controlled dangerous substances from where the defendant had been fighting with officers. The marijuana offense was therefore res gestae as to the burglary offense.
In determining whether prejudice results from a joinder of offenses, the trial court must consider the following factors: whether the jury would be confused by the various counts, whether the jury would be able to segregate the various charges and evidence, whether the defendant would be confounded in presenting his various defenses, whether the crimes charged would be used by the jury to infer a criminal disposition, and whether, considering the nature of the charges, the charging of several crimes would make the jury hostile. State v. Welch, 03-905 (La.App. 5 Cir. 11/25/03), 864 So.2d 204, 207-208, writ denied, 04-0171 (La.2/4/05), 893 So.2d 88 (citing State v. Washington, 386 So.2d 1368 (La.1980)).
A defendant alleging a prejudicial joinder of offenses has a heavy burden of proof. Welch, 864 So.2d at 208. Motions to sever offenses under La. C. Cr. P. art. 495.1 are within the sound discretion of the trial court and its ruling will not be disturbed on appeal absent an abuse of discretion. Id.
After reviewing the record, we discern that the defendant was identified by Thompson, Santos, Falcon, and Lafleur as the man who broke into Falcon’s 110residence at 513 Montgomery Avenue. Lafleur, Thompson, and Santos all saw the defendant leave the scene and enter a white sport utility vehicle. The defendant was apprehended approximately fifteen minutes later in a white Ford Explorer belonging to his next door neighbor. Deputy Darwin observed the defendant try to throw something underneath the Explorer. After the defendant had been subdued, Deputy Darwin noticed that the defendant had thrown pills and a two dollar bill on the ground. Additional two dollar bills *254 and quarters were recovered from the defendant’s pocket by Deputy Andino. A short time later, Falcon identified the defendant as the person that had burgled his house and the quarters and two dollar bills as missing from his home. It was later determined that the pills contained hydro-codone and alprazolam, both of which are controlled dangerous substances.
Thus, the facts of each offense were simple and uncomplicated. The evidence for each crime was presented chronologically and separately with each witness testifying as to either the burglary or the drug possession offenses. The charged offenses were not complicated in nature, nor were the allegations such that the jury was not able to segregate the various charges and offenses. The record does not indicate that the charged offenses made the jury hostile to the defendant, nor were any of the charged crimes were crimes of violence.
We find that the trial court did not abuse its discretion in denying the defendant’s motion to sever the burglary charge from the possession of hydrocodone and possession of alprazolam charges. Consequently, this assignment of error has no merit.
ERROR PATENT DISCUSSION
The record was reviewed for errors patent, pursuant to La. C. Cr. P. art. 920. See also State v. Oliveaux, 812 So.2d 337 (La.1975); State v. Wetland, 556 So.2d 175 (La.App. 5 Cir.1990).
In After review, we have concluded that the defendant received an illegally lenient sentence because he was not sentenced without benefit of parole, probation or suspension of sentence as required by La. R.S. 14:62.2. However, this omission necessitates no action by this Court because La. R.S. 15:301.1(C) imposes the restrictions by operation of law. State v. Singleton, 03-1307, p. 5 (La.App. 5 Cir. 3/30/04), 871 So.2d 596, 599.
CONCLUSION
For the foregoing reasons, the defendant’s convictions and sentences are affirmed.

CONVICTIONS AND SENTENCES AFFIRMED.

. At trial, the defense stipulated as to Mr. Waguespack's expertise in the identification and examination of controlled dangerous substances.